JOHN E. RISLEY, Appellant, *v.* THE INDIANAPOLIS, BLOOMINGTON AND WESTERN RAILROAD COMPANY, Respondent.

S., K. and A. contracted with the D., U., B. and P. R. R. Co. to construct and equip its road. They were to receive as part payment when the iron was laid $1,500 per mile in county, city and town bonds. S., K. and A. gave to plaintiff an order on the company directing it to deliver to him out of such payment, when due, $36,666.66 of said bonds and charge to their account. This order was accepted by the company. S., K. and A. assigned their contract, before such payment became due, with the assent of the company, to G., its president and one of its directors, who went on and finished the contract. At the time of the assignment G. knew of the order and acceptance. The company delivered the bonds to G. In an action to recover the value thereof, *held* (GROVER, J., dissenting), that from the relation which G. bore to the company it had the option to treat his dealings as upon its account and for its benefit, or to treat him as contractor on his own account; that having elected to waive the fiduciary relationship as to G. by recognizing him as contractor, allowing him to go on and complete the contract and paying him the contract-price, it could not set it up to defeat plaintiff's claim, at least it could not be done on appeal where no defence

based thereon was set up in the answer or urged on the trial; also that the order operated as an equitable assignment of so much of the contract-price when it became payable; that although S., K. and A. did not complete the contract, their assignee having so done, the contract-price became payable; that G. having notice took the contract subject to plaintiff's right, and had no right to receive, nor had the company to pay to him, the portion so assigned to plaintiff; and that therefore he could maintain his action therefor.

*Risley* v. *The I., B. and W. R. R. Co.* (1 Hun, 202; 4 T. & C., 13) reversed.

(Argued February 10, 1875; decided June 8, 1875.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial. (Reported below, 1 Hun, 202; 4 T. & C., 13.)

This action was brought against defendant, a corporation created under the statutes of Illinois and Indiana by the consolidation of two other railroad corporations, one of which was The Danville, Urbana, Bloomington and Pekin Railroad Company, and by its charter obligated to pay the debts and obligations of the original corporation, to recover certain alleged claims against the corporation above mentioned.

The complaint contained three counts. The first set forth a retainer and an agreement, on the part of the said Danville, Urbana, Bloomington and Pekin Railroad Company, to pay plaintiff $50,000 for obtaining contractors to build and equip its road; that he did procure such contractors with whom the corporation entered into a contract. The second count was upon a *quantum meruit*. The third count set forth an order drawn by Smith, King and Alton, the contractors, upon the corporation directing it to pay and deliver to the order of plaintiff $36,666.66 of certain county, city, town and township bonds, at such time as such bonds should become due and payable to the drawers, by the terms of their contract, which order was duly accepted by the corporation; that the contract was performed so as to entitle the contractors to the bonds, but that the corporation refused to deliver and converted the bonds to their own use.

The answer denied the first two counts and admitted that said corporation, at the request of the contractors, promised to deliver to plaintiff the amount of bonds specified in the third count when said contractors became entitled thereto under their contract, but alleged that the contractors failed to perform and never became entitled to the bonds ; also that said contractors, after such failure, obtained the order and returned it to defendant to be canceled.

The referee found in substance, among other things, the making of the agreement between plaintiff and the Danville, Urbana, Bloomington and Pekin railroad set forth in the first count and the performance thereof by plaintiff, also that the services were of the value of $50,000.

He also found that said corporation procured two orders to be drawn upon itself and signed by the contractors, one being the one set forth in the third count of which the following is a copy.

" $36,666.66.                    NEW YORK, *July* 15*th*, 1867.

" For value received pay and deliver to John E. Risley, or to his order, thirty-six thousand six hundred and sixty-six dollars and sixty-six cents of the county, city, town and township bonds bearing ten per cent interest (with the interest which shall then have accrued thereon), *pro rata*, out of the one thousand five hundred dollars per mile which, pursuant to the terms of our contract with your company of this date, is to become due and payable to us upon laying the iron upon your railroad and charge to the account of,

"Yours truly,        S. K. & A.

" *To* C. R. Griggs, Esq., President of the Danville, Urbana, Bloomington and Pekin Railroad Company, Urbana, Illinois."

That the said two orders were duly accepted by said corporation and delivered to the plaintiff ; that the said corporation accepted the orders and delivered them to the plaintiff to secure to him the payment for his said services in procur-

ing contractors to construct its said proposed railroad; that afterward the said contractors assigned their contract to one Clark R. Griggs, who was then the president of said corporation, which assignment was ratified and approved by the corporation; and Griggs, as such assignee, constructed the railroad under the said contract and fully performed said contract to the satisfaction of said corporation and the defendant; that afterward Griggs obtained possession of the order and wrongfully destroyed it without plaintiff's knowledge or consent; that said corporation and defendant, with full notice of plaintiff's rights, delivered the bonds called for by said order to Griggs; that the value of the bonds, with accrued interest, was $52,606. He ordered judgment for $52,172.21 which was entered accordingly. It appeared that the agreement set forth in the first count was made between plaintiff and Griggs. No evidence of authority in the latter to contract for the company was shown.

Further facts appear in the opinion.

*Amasa J. Parker* for the appellant. Griggs had power to bind the company by his agreement with plaintiff to pay him $50,000 for finding acceptable parties willing to contract to build the road. (*Elwell* v. *Dodge*, 33 Barb., 336; *Mer. Nat. Bk.* v. *State Nat. Bk.*, 10 Wall., 604, 644; *Cooke* v. *State Bk.*, 52 N. Y., 114; *Suprs.* v. *Schenck*, 5 Wall., 784; *Knox Co.* v. *Aspinwall*, 21 How. [U. S.], 539; *Bissell* v. *Jeffersonville*, 24 id., 288; *Gelpcke* v. *Dubuque*, 1 Wall., 203; *Mercer Co.* v. *Hackett*, id., 93; *Mayor* v. *Lord*, 9 id., 414; *Royal Brit. Bk.* v. *Tarquand*, 1 El. & Bl. [Q. B. and Ex.], 327; *F. L. and T. Co.* v. *Curtis*, 7 N. Y., 466; *Stoney* v. *Am. L. Ins. Co.*, 11 Paige, 635; *Soc. for Svgs.* v. *New Lond.*, 29 Conn., 174; *Comm.* v. *City of Pittsburgh*, 34 Penn., 497; *Comm.* v. *Al. Co.*, 37 id., 287; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 N. Y., 30; *Allegheny City* v. *McClurkan*, 14 Penn., 83; *Bissell* v. *Mich. C. R. R. Co.*, 22 N. Y., 258; *Pratt* v. *H. R. R. R. Co.*, 21 id., 305; *Hale* v. *Lauderdale*, 45 id., 73; *F. and M. Bk.* v. *Drov. Bk.*, 16

id., 133; *Welland C. Co.* v. *Hathaway*, 8 Wend., 60; *F. and M. Bk.* v. *B. and D. Bk.*, 4 Duer, 219; A. & A. on Corp., §§ 310, 659; *Hooker* v. *Eagle Bk.*, 30. N. Y., 83; *Turner* v. *C. and D. M. R. R. Co.*, 51 Miss., 501; S. C., 3 Am. Railway R., 248.) Plaintiff was entitled to recover under the *quantum meruit* count of his complaint. (*Hooker* v. *Bk. of Roch.*, 30 N. Y., 83; *Fills* v. *Vestvali*, 3 Keyes, 152.) Plaintiff was entitled to recover on the draft or order mentioned in the complaint. (*Vreeland* v. *Blunt*, 6 Barb., 182; *Morton* v. *Naylor*, 1 Hill, 583; *Peyton* v. *Hallett*, 1 Cai., 363; *McMenomy* v. *Townsend*, 3 J. R., 71; *Bradley* v. *Root*, 5 Paige, 632; *Barrick* v. *Austin*, 21 Barb., 241; 2 Am. L. Cas., 184.)

*Edmund Wetmore* for the respondent. Griggs was not authorized to contract to pay plaintiff for procuring and inducing contractors to build the road. (*Mech. Bk.* v. *N. Y. and N. H. R. R. Co.*, 13 N. Y., 599, 632; *McCullough* v. *Moss*, 5 Den., 575.) He had no such authority as president of the company. (*Dabney* v. *Stevens*, 10 Abb. Pr. [N. S.], 39; *Adriance* v. *Roome*, 52 Barb., 399; *Mar. Bk.* v. *Clements*, 3 Bosw., 600; *Soper* v. *B. and R. R. R. Co.*, 19 Barb., 310; *Nat. Bk.* v. *Norton*, 1 Hill, 572; *Jackson* v. *Campbell*, 5 Wend., 572; *Hoyt* v. *Thompson*, 5 N. Y., 320; *McCullough* v. *Moss*, 5 Den., 567; *Stoystown and G. T. Co.* v. *Craven*, 45 Penn., 386; *Walworth Co. Bk.* v. *F. L. and T. Co.*, 14 Wis., 325; *Bleu* v. *B. R. and A. M. and D. Co.*, 20 Cal., 602; *L. and F. Ins. Co.* v. *M. F. Ins. Co.*, 7 Wend., 31–33.) There was no evidence to sustain the finding that defendant was liable to plaintiff upon the promise to pay the bonds under the order. (*Butts* v. *Wood*, 37 N. Y., 317; *Coleman* v. *Second Ave. R. R. Co.*, 38 id., 201; *Ogden* v. *Murray*, 39 id., 202; 2 Saund. on Pl. and Ev., 1139, [m. p.] 1144; *Shelden* v. *Soper*, 14 J. R., 352.) Plaintiff is estopped by his delay as far as Griggs and the company are concerned, and cannot revoke his action to their prejudice in respect to his agreement with Smith, King and Alton. (*White* v.

*Gardner*, 10 C. B., 919 ; *Lawrence* v. *Dale*, 3 J. Ch., 23, 41 ;
*Hunt* v. *Singer*, 1 Daly, 209.)

RAPALLO, J.   The findings of the referee, that the Danville, Urbana, Bloomington and Pekin Railroad Company employed the plaintiff to procure contractors to construct its railroad, and agreed to pay him $50,000 for so doing, is not supported by any evidence.   There is evidence that Mr. Griggs, the president of the company, made such an agreement, but proof of his authority to bind the company thereby is entirely wanting.   I therefore concur in the opinion that the recovery cannot be sustained on the ground of the alleged agreement.

I also agree that the acceptance of the order drawn upon the company by Smith, King & Alton, in favor of the plaintiff, for $36,666.66 of bonds, was no ratification of the alleged agreement.   It does not appear that the company accepted the order with knowledge of the agreement, and, furthermore, the order was not consistent with it.   By the agreement, as claimed by the plaintiff, his compensation was to be paid by the company.   The payment to be made under the order was chargeable to the contractors.

But by the terms of the order, if established to have been accepted by the company, the latter became bound to pay to the plaintiff $36,666.66 of town and county bonds out of the $1,500 per mile which, pursuant to the contract of the company with Smith, King & Alton, dated July 15, 1867, were to become payable to them upon laying the iron upon the railroad.   This operated as an equitable assignment by Smith, King & Alton to the plaintiff of so much of the contract-price ; and when it became payable under the contract, the payments were to be made to the plaintiff, and charged to the contractors.

The answer admits that the railroad company did, at the request of Smith, King & Alton, promise to deliver to the plaintiff $36,666.66, in city, county, town, and township bonds, provided said Smith, King & Alton should ever

become entitled to the same by the performance of their contract.

The anwer sets up but two defences to the claim of the plaintiff under this order. First, that Smith, King & Alton failed to perform their contract, and never acquired any right to the bonds; secondly, that, for the purpose of discharging the defendants from all liability, they obtained the order and restored it to the defendants to be canceled.

The second defence was not sustained by the findings or the evidence. The plaintiff is not found or proved to have surrendered the order, but the finding is to the contrary. The material question on the issues raised by the pleadings is, whether any thing ever became payable under the order.

The referee found that, after the acceptance of this order, Smith, King & Alton assigned their contract to Griggs. That the company ratified and approved this assignment; and Griggs constructed the railroad under said contract, to the satisfaction of the company; and the company wrongfully paid over the bonds mentioned in the order, and the interest thereon, to Griggs, with notice that the plaintiff was the owner of the order and entitled to the bonds, Griggs having wrongfully obtained possession of the order, and destroyed it without the consent of the plaintiff, and the company having notice of his rights.

These facts, in the absence of any others impeaching the validity of the plaintiff's claim, would seem to confer upon the plaintiff a right of action against the company for the value of the bonds and interest thus paid over to Griggs in violation of the plaintiff's rights under the order. Although Smith, King & Alton did not personally perform the contract, yet if they substituted another contractor in their place, who was accepted by the company, and the contract was left in force, and was performed to the satisfaction of the company by the substituted contractor, the whole contract-price was earned and became payable under the contract. It was a matter of no consequence to the company whether it paid the whole contract-price to Griggs, as assignee of the

contract, or whether they paid over to the plaintiff the portion which had, by the order of Smith, King & Alton, been transferred to him. That was a question which affected the interests of Griggs more than than those of the company; Griggs, it clearly appears in the case, took the assignment of the contract from Smith, King & Alton, with full notice of the plaintiff's rights under the order. The order was drawn for the purpose of securing to the plaintiff the compensation which Griggs had promised him, and, as between Griggs and the plaintiff, he had the better right to the bonds mentioned in the order; Griggs took the assignment with notice of the right of the plaintiff to a part of the proceeds of the contract. He had himself been instrumental in creating that right, and was also interested in the payment of the plaintiff's demand; having, according to the facts as found by the referee, entered into an agreement by which he undertook to bind the company to pay the plaintiff, whereas, it now appears, he had no authority so to do, and was, consequently, individually liable to the plaintiff for any loss arising to him from such want of authority.

Upon the facts found, therefore, rejecting the finding that the company made any agreement to compensate the plaintiff, and regarding that agreement as having been made by Griggs, assuming to bind the company, but without authority so to do, the plaintiff appears to have made out a case for a recovery upon the order.

But it is urged in the opinion of my learned associate that the case is not to be treated as if Griggs had been a party disconnected from the company, who intervened and took an assignment of the contract from Smith, King & Alton, and became substituted in their place as contractor and performed their contract, but that we must take notice of the fact that Griggs was the president of the company, and as such, disqualified from contracting with it for his own advantage, and that although an assignment of the contract was made to him, such assignment must be regarded as a surrender of the contract to the company; and whatever Griggs did after such

assignment must be treated as having been done by him for the benefit of the company and not on his own account. On this ground it is contended that the contract of Smith, King and Alton was never performed, and the bonds never became payable under it, and the condition of the order was, consequently, never complied with, and nothing became due upon it.

The relation which Griggs bore to the company, no doubt, placed it in the power of the company to insist that whatever advantages he obtained under the contract assigned to him should be held for the benefit of the company, and that he should account to it for any profit he might make. But at the same time the company had the right, inasmuch as he assumed to act for himself, to hold him to the contract and to refuse to indemnify him against any loss he might sustain by its performance. It was in their power to treat him as contractor if it was to their interest to do so; the disability was upon him, not upon the company; they had the option to treat his dealing as upon their account and for their benefit, or as being for his account and at his own risk. It does not appear in the case whether he made or lost by the contract; all that appears is that the company assented to his taking the contract, permitted him to perform it and build their road, and paid to him the compensation which they had by the contract agreed to pay to Smith, King & Alton for doing the same work. The right to insist upon the fiduciary relation which Griggs bore to the company was one existing between the company and him, one which the company could enforce or waive, as its interests might dictate. Having elected to waive it as to Griggs, and having gone on and completed the contract with him and paid him the contract-price, they cannot set it up as against a third party, to defeat his claim to a portion of the contract-price which had been previously transferred to him, and of whose rights they had notice, and to justify themselves in paying over to Griggs to the prejudice of the party entitled. If they had refused to recognize Griggs as contractor or to carry out

the contract with him, and had insisted that by the assignment to him it had been canceled, and had then gone on to build the road on their own account and at their own risk, a very different case would be presented.   I think that, under the circumstances of the present case, and as bearing upon the liability of the defendants to this plaintiff, the considerations arising from the fiduciary relations between Griggs and the company have no application.  No defence based thereon appears to have been set up in the answer or urged at the trial.   The liability of the defendants to pay the contract-price under the contract was not in controversy.   The only question was whether the portion of it now in controversy should have been paid to the plaintiff or was rightfully paid to Griggs.

In the opinion delivered at General Term the strongest ground of defence shown is that the $1,500 per mile, out of which the order was payable, was fraudulently procured to be added to the original contract-price for building the road, under a corrupt agreement made by Griggs, the president, with the contractors, whereby this additional sum was to be divided between Griggs, the contractors, the plaintiff, and others, and that this division was made cotemporaneously with the making of the addition to the contract-price and the signing of the contract, by means of orders drawn by the contractors on the company and accepted by Griggs as president; of which orders that delivered to the plaintiff, and on which he now claims, was one.  If these facts had been proven and found, and the plaintiff was a party to the corrupt arrangement, a very strong case for the defence would have been established, notwithstanding that the company voluntarily paid the $1,500 per mile to Griggs pursuant to the contract.   But the insuperable difficulty in the way of reversing the judgment upon the ground of the corrupt nature of the agreement was, that no such facts were set up in the answer, or found, or requested to be found.   The reversal not being stated in the order to have been upon questions of fact must be deemed to have been on questions of law only; and in

order to sustain it the errors of law must appear from the facts found. It is well settled that for the purpose of reversing a judgment, the court cannot resort to the evidence to establish facts not found or requested to be found. The fraudulent character of the agreement, therefore, even if established by the evidence, cannot be resorted to for the purpose of sustaining the reversal. If the defendant had desired to avail itself of this defence it should have set it up in the answer and procured the necessary findings of fact to present the point.

No error of law appearing which justified the reversal of the judgment entered upon the report of the referee, the order of the General Term should be reversed and the judgment entered on the report of the referee affirmed.

All concur; except GROVER, J., dissenting, and ANDREWS, J., not voting.

Order reversed and judgment accordingly.