OLIVER W. BARNES, Appellant, *v.* GEORGE H. BROWN et al., Respondents.

In an action to recover damages for an alleged fraud, plaintiff's complaint averred and he gave evidence on the trial showing the following facts: In March, 1872, plaintiff was a director and the president of a certain railroad corporation; prior to his election to those offices the corporation had made a contract with one F. P. B. to build and equip its railway; after such election plaintiff purchased of F. P. B. an interest in said contract. At the time aforesaid the corporation owed plaintiff $27,500; the total number of its shares then issued was 117, of which plaintiff held sixty. On March 27, 1872, the defendants B. and S. entered into a written contract with plaintiff by which, in consideration of the assignment to them of his claims against the corporation, his stock and "any interest he might have in the construction contract," they agreed to pay him the sum owing to him by the corporation as aforesaid, and to deliver to him 2,000 shares of its full-paid capital stock. Said defendants required plaintiff to resign the presidency and directorship, and to use his influence to cause other directors to resign to make room for them and other directors of their selection. Plaintiff performed the contract

| 80 | 527 |
|---|---|
| 122 | 435 |
| 80 | 527 |
| 125 | 274 |
| 80 | 527 |
| 134 | 85 |
| 134 | 242 |
| 80 | 527 |
| 148 | 527 |
| 80 | 527 |
| 77 AD¹ | 39 |
| 77 AD¹ | 41 |

on his part, resigned his said offices, and procured other direcctors to resign, and said defendants and others nominated by them were chosen to. fill the vacant places. Said defendants paid to plaintiff the sum specified, and delivered to him certificates purporting to represent 2,000 shares of the stock, with the representation that it was full-paid stock. The complaint also alleged and plaintiff offered to show on the trial that the said stock was not full-paid stock, but the certificates were unlawfully issued without any consideration, for the purpose of making up stock to be delivered under the contract. This evidence was objected to and excluded, and plaintiff was non-suited on the ground that the contract of plaintiff with B. and S. was void, because the assignment to him of an interest in the construction contract when he was president and a director of the corporation, and his holding and undertaking to transfer such interest, also, the arrangement to transfer the direction and control of the corporation to B. and S. without the consent of all the then stockholders, were against public policy. *Held,* error; that plaintiff, having performed on his part, was entitled to have full-paid stock, and the obligation to him could not be discharged by the delivery of spurious, worthless stock wrongfully issued without any consideration; that it was to be presumed that the construction contract was valid, and although plaintiff while acting as director was under the disability which attaches to all trustees, and could not make a profit to himself in his dealings with the corporation, yet the assignment to him of an interest in said contract did not make it void, nor was the assignment absolutely void; it was at most simply voidable at the election of the corporation; and as plaintiff, without any attempt to perform and before any objection was made by the corporation or its stockholders, assigned, as he was competent to do, to B. and S., who were competent to take, they acquired whatever interest he had in that contract; also, that assuming it was part of the scheme that plaintiff should transfer the control and management of the corporation, he had the right to transfer all his stock and interest, and with it the control which he had the right to exercise, as he held the majority of the stock then issued; and that in the absence of proof of any wrongful or fraudulent intent, no policy of the law was violated by the arrangement.

*It seems,* that plaintiff would not have been permitted to make a profit to himself in his dealings with the corporation, and if his assignor and himself had been allowed by the corporation to go on and complete the construction contract, it could have required him to account for all the profits made by him.

*It seems,* also, that if plaintiff had attempted such a performance while he was a director, the stockholders could have intervened by suits in equity to nullify the contract as to him, or to restrain him from such performance.

As to what is a proper measure of damages in such an action, *quære.*

*Barnes* v. *Brown* (11 Hun, 315), reversed.

(Argued March 8, 1880; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon an order dismissing plaintiff's complaint on trial, and also affirming an order denying a motion for a new trial. (Reported below, 11 Hun, 315.)

*Hugh L. Cole*, for appellant. The assignment of an interest in the Byrne contract to the plaintiff was not void. (*Risley* v. *Indianapolis B. and W. R. R. Co.*, 62 N. Y., 247; *Bostwick* v. *Atkins*, 3 id., 53; *Johnson* v. *Bennett*, 39 Barb., 237; *Stewart* v. *Lehigh Valley R. R. Co.*, 9 Vroom [N. J.], 505; *Gardner* v. *Butler*, 30 N. J. Eq., 703; *Foster et al.* v. *Oxford W. and W. Ry. Co.*, 14 Eng. L. and Eq., 306; 14 Jur., 167.) If a director of a railway or other corporation makes a contract of purchase or sale with the company he represents, it may be set aside at the instance of the stockholders, although for an adequate consideration and free from fraud, but it is not void *ab origine*, and cannot be attacked collaterally by strangers. (*Torrey* v. *Bank of New Orleans*, 9 Paige, 664; *Hoffman Coal Co.* v. *Cumberland Coal Co.*, 16 Md., 456; *Cumberland Coal Co.* v. *Sherman*, 20 id., 117; *Bowen* v. *City of Toronto*, 11 Moore C. C., 465; *York Midland Ry. Co.* v. *Hudson*, 16 Beavan, 485; *Madrid Bank* v. *Peltz*, 7 L. R. Eq., 442; *Turquand* v. *Marshall*, 6 id., 134; *New Brunswick and Canada Ry. Co.* v. *Muggridge*, 2 Drewery & Smale, 367; *Stewart* v. *Lehigh Valley R. R. Co.*, 9 Vroom, 505; *Gardner* v. *Butler*, 30 N. J. Eq. 703; *Goodwin* v. *Cincinnati R. R. Co.*, 18 Ohio [N. S.], 169.) The defendants were estopped by the admissions and allegations in their answers from moving to dismiss the complaint, on the ground that the contract between Barnes and Brown and Seligman was void. (*Brazil* v. *Isham*, 2 Kern., 9; *Paige* v. *Willett*, 38 N. Y., 31.)

*John N. Barnes*, for respondents. A president of a corporation, organized to build and equip a railway, cannot

become the assignee of, or interested in, a contract made by the corporation with a third party, for such construction and equipment. (*Butts* v. *Wood*, 37 N. Y., 319; *Coleman* v. *Second Ave. Railroad*, 38 id., 204; *Blatchford* v. *Ross*, 5 Abb. [N. S.], 439.) Nor can the holder of a majority of capital stock of a corporation contract, directly or indirectly, for the transfer of the control and direction of it to other persons, without the express consent of all the stockholders. (*Fremont* v. *Stone*, 42 Barb., 169; *Taylor* v. *Earl*, 15 Hun, 1.) The contract between Byrne and the Underground Railway Co. is invalid, being in contravention of the policy of the law. (2 Laws of 1868, 465, chap. 230, § 3; id., 472, § 14; Story's Eq. Juris., § 1252; *Upton* v. *Tribilcock*, 1 Otto, 45; *Boynton* v. *Hatch*, 47 N. Y., 225; *Schenck* v. *Andrews*, 57 id., 133; *Bliss* v. *Matteson*, 52 Barb., 348; 45 N. Y., 22.)

Earl, J. This action was brought by the plaintiff against the defendants to recover damages for a fraud alleged to have been practiced by them upon him. The most material facts alleged in the complaint are these : That in March, 1872, the plaintiff was a director and president of " The New York City Central Underground Railway Company," a corporation organized under the laws of this State ; that before the plaintiff became such director and president, the company had made a contract with one Byrne to build and equip its railway, and after he became such director and president, he had purchased of Byrne an interest in such contract, to the extent of forty-five per centum thereof, which interest was of great value ; that the railway company was indebted to him in the sum of $27,500, and that the total number of shares which had then been issued were 117, of which he held a majority, to wit : sixty shares, which were also of great value ; that on the 26th day of March, 1872, the defendants Brown and Seligman entered into a written contract with him, whereby, in consideration of the assignment and transfer to them by him of all his claims against the railway company, and his stock therein, and his interest

in the construction contract with Byrne, they agreed to pay him the sum of $27,500, and cause to be delivered to him 2,000 shares of the full-paid capital stock of the company; that at the time of entering into the contract the two defendants represented to him that in order to enable them to carry out the terms of the contract, on their part, it would be necessary for the plaintiff to resign the presidency of the corporation, and that he and some of the other directors thereof should also resign as directors, to make room for the two defendants, and such other persons as they desired to associate with them, and they requested him to resign and to use his influence to cause other directors to resign; that thereafter he did resign, and procure other directors to resign, and other persons nominated by the two defendants were chosen to fill the places thus made vacant, and so plaintiff lost control, and the two defendants obtained control of the corporation; that the two defendants thereafter paid him the $27,500, and delivered to him certificates of stock in the company purporting to represent 2,000 shares thereof, in performance of their contract with him, at the same time representing that such stock was full-paid stock; that the plaintiff received such stock, believing that it was full-paid stock; that from the time he received it, to wit: January 22, 1873, to August, 1874, he was under the same belief; that at the latter date he learned that the stock was not full-paid stock, but that it had been unlawfully issued, without any consideration, and was fraudulent and worthless, as was well known to all the defendants; that the defendants, all of whom were at the time directors of the company, procured and caused the stock to be issued while acting as directors, for the express purpose and with the intent that the same might be used to discharge the obligation of Brown and Seligman to the plaintiff under their contract with him; and on account of the fraud thus practiced, it is alleged that he sustained great damage, which is claimed. The defendants served separate answers by separate attorneys, the material parts of which simply deny the allegations con-

tained in the complaint. There is no allegation or claim in any of the answers that there was any fraud or wrong practiced upon Brown and Seligman by the plaintiff, or that plaintiff's contract with them was without adequate consideration, or for any other reason invalid.

The cause was brought to trial before a jury, and the plaintiff gave evidence showing the making of the alleged contract, and full performance thereof on his part; also showing the resignation and change of directors, as alleged in the complaint, and the payment to him under the contract of the $27,500, and the delivery to him of the 2,000 shares of stock, as also alleged in the complaint, with the representation that it was full-paid stock. He also showed by the minutes of the meetings of the defendants as directors how they issued the stock, and that it was issued to several of the defendants, one of whom was defendant Brown, ostensibly for money advanced and services rendered to the company; and he also showed that the others of such defendants, thus taking the stock, transferred their shares to Brown, and that he transferred all the shares to plaintiff. It also appeared in the pleadings and the evidence that Brown and Seligman and the other defendants were interested together, in some way, in a connected line of railroads from the Harlem river to some point in the State of Vermont, and that their object in seeking to get control of The Under Ground Railway Company was to secure a suitable entry for their line of railroads into the city of New York.

After all these and other facts appeared, the plaintiff offered to show that the stock "was issued without any valid consideration of payment, and for the purpose of making up stock to be delivered to the plaintiff under the contract in evidence." To this evidence all the defendants but Park objected, upon the grounds, in substance, *first*, that by the plaintiff's own testimony his interest in the Byrne contract, made in part the subject of his agreement with Brown and Seligman, was acquired in a manner which was against public policy, and void; and, *second*, that the agreement by which

the directors were to be changed in the interest of Brown and Seligman was against public policy, and the contract based thereupon was void. The trial judge sustained the objections, upon the precise grounds stated, and excluded the evidence offered.

After some further evidence not important now to be noticed, the plaintiff rested ; and then a motion to nonsuit the plaintiff was made on behalf of all the defendants, upon two grounds, and two only, as follows :   "*First.* That the contract between the plaintiff and Byrne, by which the former claims to have acquired an interest of forty-five per cent, in what has been spoken of as the contract between Byrne and the New York City Central Underground Railway Co., was void, for the reason that the plaintiff, at the time of acquiring the said interest, was the president of and a director of the New York City Central Underground Railway Co., and the plaintiff's contract with Brown and Seligman, upon which this action was founded, was thus void because the assignment of Byrne of such interest in said contract, and the plaintiff acquiring, and holding, and undertaking to transfer such interest, were contrary to public policy. *Second.* That it appears by the plaintiff's testimony that it was a part of his arrangement with Brown and Seligman, pursuant to which the latter were to give him 2,000 shares of full-paid stock of said Underground Railway Co., and a part of the consideration therefor, that the plaintiff, as the alleged holder of the majority of the capital stock of the company, outstanding on March 26, 1872, was to transfer the direction and control and management of said Underground Railway Co., to said Brown and Seligman, without the consent of all the then stockholders, and therefore his agreement with Brown and Seligman, upon which this action was founded, was void, as contrary to public policy." The counsel for defendant Park also moved separately to nonsuit, upon the further ground, in substance, that although Park had objected to none of the evidence, the plaintiff had offered no evidence to go to the jury in any manner connect-

ing him with the conspiracy alleged in the complaint. The judge overruled this ground of nonsuit, and Park's counsel excepted to such ruling. The judge then nonsuited the plaintiff, upon the two grounds stated.

It is clear, upon the facts proved and offered to be proved, that the plaintiff had a cause of action against the defendants. He was entitled to have the 2,000 shares of full paid stock, having fully performed the contract with Brown and Seligman on his part. The obligation to him for such stock could not be discharged by delivering to him worthless, spurious stock, wrongfully issued by the corporation, without any consideration received therefor. It is not claimed, and could not be claimed, that the corporation or its directors could create any valid stock by issuing the same without any consideration. The directors assuming to issue stock in that way, would perpetrate a wrong upon the corporation and its stockholders, and a fraud upon every person who took such stock as full-paid stock, relying upon the appearances and deceived thereby. (*Mechanics' Bank* v. *The N. Y. and N. H. R. R. Co.*, 13 N. Y., 599; *Bruff* v. *Mali*, 36 id., 200; *Morgan* v. *Skiddy*, 62 id., 319; *Shotwell* v. *Mali*, 38 Barb., 445.) The proof offered tended to show that the stock delivered to the plaintiff was not full-paid stock, and yet that it was issued for the purpose of delivery to the plaintiff as full-paid stock. The proof thus offered was very material, and if received would have gone far toward completing the proof requisite to sustain the action. The proof having been excluded upon grounds fatal to any recovery, the plaintiff was not required to give any further evidence. The court having excluded evidence absolutely essential to any recovery, the plaintiff was excused from giving any proof as to his damages. It is sufficient that the case was such as that the plaintiff could have sustained substantial damages from the fraud alleged. No question was made about the damages at the trial, and it is not important here to consider them, or to attempt to lay down any rule which shall give the measure of them. It is enough that we can see that if the plaintiff

shall in other respects, upon a new trial, give sufficient proof, he will be entitled to recover some damage.

The contract between Byrne and the corporation was not introduced in evidence and is not before us. It was not alleged in the answer and it was not claimed upon the trial that that contract was unauthorized or illegal. We must assume, therefore, here, that it was, when made, a legal contract, such as the corporation could make. It is claimed, however, that the assignment of the interest in that contract to the plaintiff while he was a director was void as being contrary to public policy. It is true that the plaintiff while acting as a director of the corporation held a fiduciary relation to it. He was a trustee of the corporation, and was under the same disability which attaches to all trustees in dealing with trust property and in transacting the business pertaining to the trust. He could not act as trustee and for himself at the same time, and he would not be permitted to make a profit to himself in his dealings with the corporation. It is against public policy to allow persons occupying fiduciary relations to be placed in such positions as that there will be constant danger of a betrayal of trust by the vigorous operation of selfish motives. The rules upon this subject are illustrated in many cases, but few of which are here cited. (*Risley* v. *Indianapolis, B. and W. R. R. Co.*, 62 N. Y., 240; *Butts* v. *Wood*, 37 id., 317; *Stewart* v. *The Lehigh Valley R. R. Co.*, 9 Vroom, 506; *Gardner* v. *Butler*, 30 N. J. Eq., 703; *Foster* v. *The Oxford W. and W. Ry. Co.*, 14 Eng. L. and Eq., 306; *Aberdeen Ry. Co.* v. *Blaikie*, 1 Macqueen H. L., 461.)

The assignment of a portion of the Byrne contract to the plaintiff did not render that contract void. There was nothing done under the contract. If the plaintiff had attempted to do anything under it, so that his interest under it might come in conflict with his duty as trustee, then the principle of the above cases could have been invoked against him. The corporation could have permitted him and Byrne to perform the contract and then could make him account

to it for all the profits he made by such performance. If he had attempted to perform the contract while he was director, the stockholders could probably have intervened, by some suit in equity adapted to the nature of the case, to nullify the contract as to him, or to restrain him from the performance thereof, or to compel him to elect to resign his office of director or to give up the contract. In any view of the case, the assignment to him was not absolutely void ; it was at most simply voidable at the election of the corporation or its stockholders. Besides, the assignment to him did not destroy the Byrne contract, and before he attempted with Byrne to perform it, and before any objection was made by the corporation or any of its stockholders to his connection with it, he assigned, as he was perfectly competent to do, all his interest therein to Brown and Seligman who were perfectly competent to take. It is probably true that there was very little, if any, value in plaintiff's interest in that contract. But it is not claimed that he misrepresented its value, or that Brown and Seligman were in any way deceived or even mistaken as to its true condition and value. All the plaintiff assigned was " any interest he might have " in that contract, and that interest the two defendants thought would be of some advantage and bargained for and took. The trial judge therefore erred in holding that the contract with the two defendants was rendered void because of anything pertaining to the Byrne contract and the assignment of the interest therein.

The second ground of nonsuit is equally untenable. There was nothing in the written contract between the parties which required the plaintiff to transfer the control and management of the corporation to Brown and Seligman; but I will assume that it was the understanding and a part of the scheme that he should do so. Brown and Seligman were attempting to procure the control of the corporation and of its franchises for a legitimate purpose. There is no reason to suppose that they meant to perpetrate any fraud on the stockholders. They were dealing with a person who held a majority of the

stock and who in virtue thereof had the right and the power to control the corporation within the limits of its chartered powers.  He had the right to sell out all his stock and interest in the corporation, and in doing so he perpetrated no wrong upon any one, and when he ceased to have any interest in the corporation, it was certainly legitimate and right that he should cease to control it.  It is the general rule, sanctioned by the policy of the law, that those who have the largest interest in corporations may control them, as they have the greatest interest that they shall be well managed. When Brown and Seligman succeeded to the interest of the plaintiff, holding a majority of the stock then issued, it was perfectly proper that they should have the control of the corporation, and it was not improper or illegal for the plaintiff to surrender the control to them.  There is no proof that in obtaining the resignation of the plaintiff and other directors, and in filling the vacancies, any fraud or wrong was intended upon the corporation or any of its stockholders, or that any of the stockholders at any time objected to what was done in this respect.  It was simply the mode of transferring the control of the corporation to those who by the policy of the law ought to have it, and I am unable to see how any policy of the law was violated, or in what way, upon the evidence, any wrong was thereby done to any one.

The point was not taken in the answer or at the trial that there was an absence or failure of consideration for the contract of Brown and Seligman, and it could not have availed if it had been.  They got all they bargained for, and obtained control of the corporation and its franchises.  They obtained the sixty shares of stock held by the plaintiff.  It does not appear by what title plaintiff held such stock, but it is sufficient that he transferred it to Brown and Seligman, and so far as appears no one has questioned their title and they have not complained that their title was not valid.

It is clear, therefore, that the evidence offered was improperly excluded, and that the nonsuit was improperly granted upon the grounds stated.  But it appears from the opinion

pronounced at the General Term that the nonsuit was sustained there upon a ground not stated at the circuit, to wit : upon the ground that the contract between the corporation and Byrne was illegal. We think the ground taken by the General Term is untenable for the reasons above stated, as well as for the reason that the alleged illegality of that contract did not so far pervade the contract between the plaintiff and Brown and Seligman, no fraud being practiced upon them, as to render it void.

The case of Park stands on a different footing from the other defendants. He did not object to any of plaintiff's evidence. As to him the plaintiff was permitted to give all the evidence he could, and the evidence given tends to show that he was guilty of no fraud.

The judgment as to Park must be affirmed, with costs, and as to the other defendants, it must be reversed and new trial granted, costs to abide event.

CHURCH, Ch. J., RAPALLO and DANFORTH, JJ., concur ; FOLGER and MILLER, JJ., dissent ; ANDREWS, J., absent.

Judgment accordingly.