(68 Misc. Rep. 548.)

POPPENHUSEN v. POPPENHUSEN et al.

(Supreme Court, Trial Term, Queens County. August, 1910.)

1. Dower (§ 12*)—Property Subject—Property Held Under Express Trust.

At the consolidation of two railroad corporations in 1869, the officers of one of them passed a resolution authorizing the conveyance of its land according to instructions of the directors of the other company, and certain lands which had been conveyed to its president for its benefit were thereupon conveyed to P., a director in both companies; the deed being delivered to counsel for the new company, recorded, and listed among its papers and afterwards in possession of its officers. The new company paid interest on a prior mortgage on the land, and ultimately erected a station thereon, to P.'s knowledge. *Held*, that the execution of the deed to P., in connection with the resolution, amounted to an express trust, and, as related to the official position of the grantee, formed the basis for a constructive trust, and was not within the New York statute of uses, abolishing resulting trusts where the consideration is paid by another than the grantee, and P.'s widow was not entitled to dower in such lands.

[Ed. Note.—For other cases, see Dower, Cent. Dig. § 48; Dec. Dig. § 12.*]

2. Witnesses (§§ 141, 159*)—Competency—Transaction with Decedent—Parties.

The minute book of the railroad company, containing the resolutions and the conditions of deeds to be executed, was not a personal transaction with P., and the witness producing and proving it, even if an agent of the railroad company, was not a party to the action by P.'s widow against the railroad company for dower, and was not disqualified to testify to such record, under Code Civ. Proc. § 829.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 576–579, 669; Dec. Dig. §§ 141, 159.*]

3. Evidence (§ 352*)—Documentary Evidence—Records of Corporation.

While the entries in the minute book of a railroad, imposing the terms and conditions of a deed to be executed to P., might not bind outsiders, they were admissible in evidence as showing the act of the railroad company and the assent thereto by P., its appointee, to take title; he being its treasurer at the time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1398–1403; Dec. Dig. § 352.*]

4. Trusts (§ 42*)—Evidence.

A subsequent conveyance of land by P., held by him under conditions similar to those under which he held the land in question, at an express consideration of $1,000, was not evidence of P.'s private ownership of the land in question, in the absence of proof of the disposition made by him of the consideration.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 61; Dec. Dig. § 42.*]

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. TRUSTS (§ 43*)—EVIDENCE.

   In an action for dower, after introduction of a deed to plaintiff's deceased husband as part of her chain of title, testimony of the person who drafted such deed was admissible to show the nature of the transaction and that the grantee held under the deed as a trustee for a corporation of which he was an officer.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

Action by Caroline S. Poppenhusen against Conrad H. Poppenhusen and others. Judgment of dismissal.

Hamlin & Conklin (Lewis R. Conklin, of counsel), for plaintiff.

Rounds, Hatch, Dillingham & Debevoise (Eugene H. Hatch and Edwin S. Lewis, of counsel), for defendant Poppenhusen.

Joseph F. Keany (James W. Treadwell, of counsel), for defendant Long Island Railroad Company.

PUTNAM, J. This action is by the widow of Herman C. Poppenhusen (who died March 1, 1891) for her dower in a lot of land on the northerly side of Bradford avenue, Flushing—now the Third ward of the borough of Queens. Title to Herman C. Poppenhusen is claimed by a conveyance from Orange Judd and wife, dated May 1, 1869, and recorded on July 1, 1869. About 1870 the lot was built upon as part of a railroad station by the corporate predecessor of the defendant the Long Island Railroad Company, and has since been occupied as the Flushing Station.

There are here concerned two railroad companies, namely, "the New York & Flushing Railroad Company," incorporated March 22, 1859 (which was operating a railroad into Flushing), of which Oliver Charlick was president, and the Flushing & North Side Railroad Company, organized in April, 1868. Prior to the deed in question, the directors of the New York & Flushing Company had been considering a change of location of the Flushing depot from Main street back to Bradford avenue. In 1868 Mr. Charlick directed Mr. L. Bradford Prince, an attorney, to purchase land on the north side of Bradford avenue for the railroad, but requested that the acquisition be kept secret. In October, 1867, three lots (including one here in question) had been bought at auction by David D. M. Master, who had given back a purchase-money mortgage. Mr. Prince sought out Mr. Master and obtained a conveyance of these lots, subject to this purchase-money mortgage. Mr. Prince drew the deed, dated April 1, 1868, but left the name of the grantee blank, and procured its execution by Mr. Master, and paid the consideration from funds supplied by Mr. Charlick. After passing the deed in this form to Mr. Charlick, it appears that the name of the grantee inserted was Orange Judd, who was an officer and director of the New York & Flushing Railroad Company. Mr. Judd was also one of the incorporators and directors of the Flushing & North Side Railroad Company, then incorporated. Conrad Poppenhusen, father of plaintiff's husband, having been interested in the extension of railroads toward College Point and Whitestone, was active in this new enterprise. Some negotiations

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had been started looking to the purchase by the new company of a part of the old line into Flushing.

On June 26, 1868, under the presidency of Mr. Charlick, a meeting of the directors of the New York & Flushing Railroad Company was held, at which it was voted to change the site of the depot to Bradford avenue, and a map thereof was filed in the office of the clerk of Queens county, on June 28, 1868. On August 11, 1868, the Poppenhusens entered the directorate of the New York & Flushing Company; Orange Judd being then chosen president and treasurer, with Conrad Poppenhusen and Stephen P. Gooding upon the executive committee. At other meetings later in 1868, the subject of consolidation with the new company was considered. On November 30, 1868, Herman C. Poppenhusen became director of the New York & Flushing Company and acted as secretary for that meeting.

On January 19, 1869, the deed above mentioned, which Mr. Prince had obtained from Mr. Master with the name of the grantee in blank, in which appeared Mr. Judd's name as grantee, was recorded. On April 6, 1869, a special act (Laws 1869, c. 142) was passed for the purpose of consolidating the two roads. On April 26, 1869, the directors of the new Flushing & North Side Company, being about to consummate the corporate union, elected H. C. Poppenhusen treasurer, to take effect May 1st, and passed resolutions providing that, after consolidation, a general mortgage should be issued upon the entire line, but, before giving this mortgage, that:

"All lands not required to be used for railroad purposes shall be conveyed to Herman C. Poppenhusen, to be held in trust for the benefit of this railroad company, and that the president and secretary be authorized to execute to Herman C. Poppenhusen proper deeds of conveyance of such lands."

Mr. Judd was then president and the nominal grantee of these lots, which, however, would be required for the new station if the plans of the older road were to be carried out. The deed of partial consolidation of the two railroads was dated May 1, but was not acknowledged till June 30, and recorded July 6, 1869. At a meeting on June 30, 1869, of the directors of the old New York & Flushing Company, at which both Orange Judd and H. C. Poppenhusen were present, this deed of partial consolidation was authorized, and at the same meeting it was unanimously voted:

"That, in transferring the property to the said Flushing & North Side Railroad Company, the president and secretary be authorized to convey the several lots of land of this company in Flushing to H. C. Poppenhusen, as may be directed by the directors of the Flushing & North Side Railroad Company, who shall furnish order for the same."

As already stated, the deed from Orange Judd and wife to the plaintiff's husband is acknowledged on the same day—June 30, 1869. On that day also was acknowledged the general mortgage, though dated May 1st.

There is also evidence tending to show that the deed itself from Mr. Judd to Mr. H. C. Poppenhusen was delivered to counsel for the railroad company, and, after being recorded, was listed in Mr. Hinsdale's register among the deeds and papers of the Flushing & North Side Railroad Company. It was also testified that later the deed had

been transferred, with other documents, to the auditor of the railroad, at Long Island City, where, however, it has not been since traced. The original deed from Judd to H. C. Poppenhusen is also produced from the files of the railroad company, and not by the Poppenhusen family.

There is also evidence showing that the interest on the purchase-money mortgage upon the lot in question was regularly collected from the railroad company up to the year 1871, which was as late as the records of Mr. Prince were procurable. It also appeared that Mr. H. C. Poppenhusen was thereafter on the executive committee of the consolidated railroad company, and that as such he was officially cognizant of the erection of the present brick station house on the lot in question, and, so far as appears, never made any claim to the ownership thereof.

It is, however, urged, that the railroad company cannot show any beneficial interest in this lot, because the New York statute of uses, since 1830, has abolished resulting trusts when the consideration for the grant is paid by another than the grantee. The statute declares that no use or trust results from such payment (except as to creditors), unless the grantee either—

"(1). Takes the same as an absolute conveyance in his own name, without the consent or knowledge of the person paying the consideration; or

"(2) In violation of some trust, purchases the property so conveyed, with money or property belonging to another."

Laws 1909, c. 52, § 94 (Consol. Laws, c. 50); 1 Rev. St. pt. 2, c. 1, tit. 2, §§ 51–53.

1. It now appears that the railroad company had previously purchased the land, and it was in connection with this deed to Judd that the consideration was paid by another than the grantee. Judd, the plaintiff's grantor, had since been holding the title for his company. Even if the railroad company, as against him, could not have enforced a resulting trust, Mr. Judd could properly recognize his fiduciary relation and convey the land as his company might direct. Robbins v. Robbins, 89 N. Y. 251. The court there said (page 257):

"In the next place, the plaintiff is not entitled to have the statute (section 51, ante) strained in his favor, and, taken literally, it does not cover his case. The grant to him was from Fay, and for that no valuable consideration was paid. Fay conveyed because, in common honesty and fulfillment of his trust, he was bound to convey. The plaintiff's claim is stricti juris. The statute (section 51) now invoked by the plaintiff, if operative in such a case and according to the plaintiff's claim, was effectual as between Fay and the defendant, and vested in Fay the title so completely that the defendant had no legal or equitable interest in the land. Garfield v. Hatmaker, 15 N. Y. 475. Fay had a right, however, to recognize his moral obligation and convey it to such person as defendant chose."

See, also, Smith v. Balcom, 24 App. Div. 437, 48 N. Y. Supp. 487; Church of St. Stanislaus v. Algemeine Verein, 31 App. Div. 133, 52 N. Y. Supp. 922.

2. Also, where an express trust has been created, this statute does not apply. Gage v. Gage, 83 Hun, 362, 31 N. Y. Supp. 903; Carr v. Carr, 52 N. Y. 251, 261.

In view of the contemporaneous acts on June 30th, it must be inferred that the deed to Mr. Poppenhusen was executed in obedience to the resolution of the board of directors. Such acts, when taken in connection with the resolution of April 26th, amount to an "express trust," and, as related to the official position of the grantee, form the basis for a "constructive trust." Such conveyance of the lots, taken in connection with the manner of their purchase, created equities that a court cannot overlook. Barnes v. Brown, 80 N. Y. 527–535; Cook, Corp. § 653. On application of the railroad company a court might have decreed specific performance—a right which it was declared the New York statute of uses (2 Rev. St. pt. 2, c. 7, tit. 1, § 10) should not be construed to abridge, where there has been part performance.

In Michigan, which also has followed New York and abolished resulting trusts, such statute seems not to interfere with enforcing the duty of railroad officials with respect to lands acquired with corporate funds. Mich. Air Line Co. v. Mellen, 44 Mich. 321, 6 N. W. 845.

Plaintiff, however, urges that the minute book of the corporation is not evidence against this plaintiff; also that the entries therein are inadmissible under section 829 of the Code. Such a record of a corporation, however, is in no sense a personal transaction. Furthermore, a witness producing and proving such a record, even if an agent of the corporation, is not a party to the action, and is not interested, and, therefore, is not disqualified. Matter of Woodward, 69 App. Div. 286, 293, 74 N. Y. Supp. 755.

While such entries might not bind outsiders, the record of the vote imposing the terms and conditions of these deeds to be executed is admissible as showing the act of the corporation and the assent thereto by Mr. H. C. Poppenhusen, its appointee, to take title, being its treasurer at the time. The effect of such a record or minute upon the official making it, or under whom it is made, as showing his assent, is well recognized. Wigmore, Ev. § 1074.

Comment is made on the fact that H. C. Poppenhusen and wife did afterward, in May, 1872, convey to the Newtown & Flushing Railroad Company lot 55, which had also been included in the conveyance from Orange Judd. Indeed, Mr. Prince testified that lot 55 was acquired by Mr. Charlick for railroad purposes, near the same time as the three lots here in question.

It is urged that the consideration of $1,000, stated in this deed, points to the conclusion of personal ownership by Mr. Poppenhusen. It is not shown what disposition was made of this $1,000, or what were the corporate relations between the two railroads. As Mr. Poppenhusen was still on the executive committee of the Flushing & North Shore Railroad in 1872, this conveyance in his name may be quite consistent with the execution of some intercorporate arrangement.

Mr. Prince's conversations with Mr. Charlick and his acts in pursuance thereof are admissible as showing the real transaction, and are competent after the deed drawn by Mr. Prince had been introduced as part of plaintiff's chain of title. Without such evidence showing a fiduciary relation, great frauds could be perpetrated by nominal holders of title. My conclusion, therefore, is that Mr. Herman C. Pop-

penhusen had not a seisin of the lot mentioned in the complaint, and was never the real owner thereof, and hence that the plaintiff has no dower rights therein.

Judgment is therefore directed dismissing the complaint; also dismissing the counterclaim of the Long Island Railroad Company.

Judgment accordingly.