Frank Livingston Dufford and Elizabeth Dufford
Slack, complainants-appellants,

*v.*

Alfred G. Nowakoski, Gregory Nowakoski, Peter Nowa-
koski, Mary Sewell Dufford, Shirley Harris, Inez
Nowakoski and Marion Dufford Harris, defendants-
respondents.

[Argued October 27th, 1938.    Decided February 6th, 1939.]

*Messrs. Smith & Slingerland,* for the appellants.

*Mr. Walter E. Cooper,* for the respondent Alfred G. Nowakoski.

*Mr. Arthur T. Vanderbilt,* for the respondents Inez Nowakoski, individually, and as guardian *ad litem* for the defendant Peter Nowakoski and Gregory Nowakoski, infants, and for Marion Dufford, guardian *ad litem* for the defendant, Mary Sewell Dufford, infant.

*Mr. William E. Torrence,* for the respondent B. Harve Harris, guardian *ad litem* of Shirley Harris, infant.

*Mr. Richard W. C. Sim,* for the respondent Marion Dufford Harris.

The opinion of the court was delivered by

RAFFERTY, J.

This is an appeal from a decree in chancery declaring valid a certain trust agreement executed on April 3d, 1937, between

appellants below and Alfred G. Nowakoski, as trustee. The decree declared, amongst other things, that the trust agreement was supported with sufficient and adequate consideration.

In his conclusions, the learned vice-chancellor recited the facts as follows:

"This suit is brought by Frank Livingston Dufford and Elizabeth Dufford Slack, brother and sister and next of kin of Anne D. DeWitt, a resident of New York State, who was judicially declared incompetent and for whom the defendant Alfred G. Nowakoski has been appointed a committee of her person and property. The bill prays decree declaring invalid a trust agreement made on the 3d day of April, 1937, by complainants and the surrender and cancellation thereof. The agreement in substance provides that complainants (settlors) in order to insure that any property which may be inherited by them from Anne D. DeWitt will be enjoyed by them respectively for life, and after their death go to the natural objects of the bounty of the said Anne D. DeWitt, and since it is impossible to foretell whether both settlors will survive Anne D. DeWitt, the settlors assign and transfer to the trustee any and all property which either of them may receive from the estate of their sister, Anne D. DeWitt, 'as a distributee, heir or next of kin of said Anne D. DeWitt or pursuant to the terms of any last will and testament which said Anne D. DeWitt may leave at the time of her death;' that the assignment is made in trust for the following purposes: (a) If the settlors survive the said Anne D. DeWitt, the trustee shall divide the principal received by him from the estate of the said Anne D. DeWitt in two equal shares and hold and invest the same. (b) Collect the income from one of said shares and apply the net income to the use of Elizabeth D. Slack during her life and upon her death transfer and pay over the principal thereof, in equal shares *per capita,* to the then living grandnieces and grandnephews of Anne D. DeWitt. (c) To collect the income from the other equal share and apply the income to the use of Frank Livingston Dufford during his life and upon his death transfer and pay over the principal to his then living descendants of 'whatsoever degree

of consanguinity, in equal shares *per capita.*' (d) If Elizabeth D. Slack shall survive Anne D. DeWitt, but Frank Livingston Dufford shall not survive said Anne D. DeWitt, the trustee to hold, manage, invest and reinvest the entire principal of the estate of Anne D. DeWitt received by [him] and shall collect and receive the income therefrom and apply the same to the use of Elizabeth D. Slack during her life and upon her death pay the principal, in equal shares *per capita* to the then living grandnieces and grandnephews of Anne D. DeWitt. (e) If Frank Livingston Dufford shall survive said Anne D. DeWitt but Elizabeth D. Slack shall not survive said Anne D. DeWitt, the trustee to hold, manage, invest and reinvest the entire principal of the estate of said Anne D. DeWitt received by him and collect and receive the income therefrom and apply the same to the use of Frank Livingston Dufford during his life and upon his death pay the principal to his then living descendants of 'whatsoever degree of consanguinity, in equal shares *per capita,* or if there shall be no such then living descendant, to the then living grandnieces and grandnephews of said Anne D. DeWitt, in equal shares *per capita.*' (f) Notwithstanding the above provisions, each settlor after the death of Anne D. DeWitt may, in writing, direct the transfer by the trustee to each of them out of the principal of the trust fund such sum as such settlors shall specify, not to exceed in the case of each, the sum of $10,000 out of the principal of the fund held for the benefit of such settlor.

"Frank Livingston Dufford is seventy-six years of age and Elizabeth Dufford Slack is seventy-two years of age. The defendant Alfred G. Nowakoski is the son-in-law of complainant Frank Livingston Dufford."

To this may be added that Mr. Nowakoski is also constituted as trustee in the trust agreement.

In the case of *Fidelity Union Trust Co.* v. *Reeves, 96 N. J. Eq. 490; affirmed, 98 N. J. Eq. 412,* the learned court said: "The great weight of authority in England and in this country is that a mere expectancy or possibility by inheritance or testament is not assignable at law but is assignable in equity

for a valuable consideration, and that the assignment will be enforced in equity when the expectancy or possibility has changed into a vested interest or possession." The court further said, "the principles and doctrine of public policy are matters of common professional knowledge. While the term is profound, as well as panacean in legal jurisprudence, it admits of no exact definition. Its virtue and vigor lies in its flexibility of application, and while reported cases furnish guides, they rarely are compelling in precedent."

Our consideration of the facts herein leads us to the conclusion that the trust agreement involved must be declared void as being contrary to public policy.

It is admitted that this settlement did not render the settlors improvident and we may consider, although it is disputed, that the settlors had knowledge of the effect of the instrument and that adequate consideration supported the agreement.

The agreement between the parties settlor is capable of the construction, as admitted by respondent Nowakoski, that it was anticipated that should Mrs. DeWitt regain competency, she might bequeath her entire estate to either of the parties settlor to the exclusion of the other. Counsel frankly argues, "Under the agreement such a result could not occur because the estate would be shared equally." It is thus made manifest that the operation of the trust agreement would have the effect of frustrating or circumventing the testamentary purpose of the testatrix and bring about a result neither intended nor desired by the testatrix. Such an arrangement between prospective beneficiaries under the will of a relative cannot be said to advance public policy, but must be said to be contrary to the express purpose of the statute of wills. It is a deliberate substitution of the laws of intestacy by interested parties for the laws governing the estate of one dying testate and is obviously repugnant to the policy of the law as declared in the statute of wills. There is a substantial distinction between one making an assignment of an expectancy or possibility by inheritance or testament for a valuable consideration, and an agreement

between expectant heirs with respect to the division of an expected estate when such division is made without the knowledge, consent, acquiescence or promise of the person vitally concerned, to wit: the present possessor of the estate, and the effect of which agreement will avowedly nullify the operative law of testacy. To permit the latter is to open the door to grave fraud or worse. Counsel for respondents cites *Nugent* v. *Smith, 202 App. Div. 279; 195 N. Y. S. 338; affirmed, 234 N. Y. 611; 138 N. E. Rep. 467,* as authority against this conclusion. In that case the two potential distributees of testatrix were a son and granddaughter. It appeared that the son contracted a marriage and feared that if his mother were to obtain knowledge thereof it would cause her to change her will to the disadvantage of the son. In consideration of the granddaughter's silence respecting the marriage, the son agreed with her that he would assign a one-half interest in any and all property which might come to him from his mother's will or otherwise. Under this agreement the granddaughter benefited substantially. Upon appeal it was held that a complaint in an action for specific performance of this agreement stated a good cause of action. The question involved in this case referred only to the sufficiency of the complaint and decided nothing else. No mention is made in the decision respecting the application of the doctrine of public policy in that situation. The case but serves to emphasize the opportunity for fraud inherent in such a situation. Admittedly it was the fear of the son that were his mother acquainted with the fact of his marriage, a thing in itself legal and not immoral, she would make a different disposition of her estate. The agreement of the son with the granddaughter amounted to nothing more nor less than contracting to withhold a fact which was deemed to be material to the decision of the mother in the disposition at death of that which she then possessed. The case does not mention the earlier case of *In re Zimmerman's Will, 172 N. Y. S. 80,* wherein it is said, "There are many historical instances in which certain assignments or transfers have been universally condemned in all ages as contrary to public policy

\* \* \*. Now I take it that the assignment of a *spes successionis* is one of these established instances. It is contrary to public policy that *spes successionis* should be assignable. An heir apparent or presumptive next of kin has no interest in his ancestor's estate until the latter dies \* \* \*," and this is the law of our state as well, except as the assignment may be enforced in equity when based upon a valuable consideration.

It is to be observed that respondent Nowakoski, by order of the New York supreme court, is the duly appointed committee of the person and property of Mrs. DeWitt, an incompetent presently within that jurisdiction. Under the trust agreement he is also trustee of the estate sought to be created. Under this arrangement Mr. Nowakoski finds himself in a dual and contradictory position. He serves two masters. In a situation requiring expenditures on behalf of Mrs. DeWitt, what considerations or inducements will influence him? Shall he expend the funds for the well-being of his ward or shall he deny the ward the advantage of her possessions in order to conserve them for the trust estate? Will he encourage action to determine a return to competency or will he permit the situation to remain as is? Some assistance is given in resolving the query by the testimony of Mr. Nowakoski, who said, "I was definitely not interested in having this agreement executed from the very inception of the whole matter. I want to tell you I never wanted to get into it from its very inception." But a moment later he testified that he went to a great deal of trouble about the matter because "I was protecting the rights of my wife and my children." That this is so, is evidenced by the provision that the ultimate division of the *corpus* of the estate would be *per capita*. In the situation existing at the time of the execution of the agreement the *per capita* distribution would give to the family of Mr. Nowakoski a one-half interest, while the remaining one-half interest would be distributed between the other two branches of the family. In his dual capacity Mr. Nowakoski, a counselor-at-law of this state, viewed himself as the holder of title to the property of Mrs. DeWitt and upon her death

as the holder of title to the same property in his capacity as trustee. Upon the death of Mrs. DeWitt, he would account to himself as trustee, a situation which would seriously limit the possibility of a challenge to the account or any other action as committee for the incompetent.

The whole situation is pregnant with inducement to main-tain the *status quo* and gives rise to possibilities opposed to the faithful administration of his trust as committee for the incompetent. It is not shown that Mr. Nowakoski advised the New York supreme court of his assumption of the office of trustee under the agreement. We may well consider whether that court would have permitted him to continue as committee for the incompetent as well as trustee under this agreement.

The rule which forbids those who fill fiduciary positions from making use of them to benefit their personal interests "is deservedly strict in its requirements and operation. It extends to all transactions, where the individual's personal interest may be brought into conflict with his acts in a fiduciary capacity, and it works independently of the questions of whether there was fraud, or whether there was good intention. Where the possibility of such a conflict exists, there is the danger intended to be guarded against by the absoluteness of the rule. *Davoue* v. *Fanning, 2 Johns. Ch. 260; Barnes* v. *Brown, 80 N. Y. 527." Bar* v. *New York, L. E. and W. Railroad Co., 125 N. Y. 263; 26 N. E. Rep. 145, 148.*

We are not unmindful that "public policy requires * * * that men of full age and of competent understanding shall have the utmost liberty of contracting and that their contracts, when entered into freely and voluntarily, shall be held sacred and shall be enforced by the courts of justice," and that we are not lightly to interfere with this freedom of contract. *Driver* v. *Smith, 89 N. J. Eq. 339, 359.*

In balancing the opposing considerations, however, we conclude that for the reasons stated the trust agreement in suit is void because contrary to public policy and the decree below will be for that cause reversed. This makes it unnecessary to consider other points urged. The matter of counsel fees

awarded below being academic hereunder need not be treated. The decree below is reversed.

*For affirmance*—TRENCHARD, BODINE, HETFIELD, WELLS, WOLFSKEIL, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, DONGES, HEHER, PERSKIE, PORTER, DEAR, RAFFERTY, WALKER, JJ. 10.