Andrew L. Fennessy, Respondent, *v.* William F. Ross, Appellant.

*Contract — an agreement that a purchaser of stock shall hold office in a corporation — when void as against public policy.*

Contracts entered into by directors and officers of a corporation for the purpose of trading upon, or attempting to barter away, the interests of a corporation for their private advantage, are void as against public policy.

The complaint in an action alleged that the plaintiff and the defendant entered into an agreement by which the plaintiff agreed to deliver to the defendant, for a sum fixed, certain shares of the capital stock of three corporations; that the defendant, having failed to pay the sum agreed upon, the plaintiff sold the stock for the defendant's account, and for the loss sustained thereby the plaintiff sought to recover. It appeared from the agreement which was annexed to the complaint that, besides the delivery of the stock, the plaintiff had made a proposition, to which the defendant agreed, that the defendant should have the management of the three companies at a certain salary, and that, after the expiration of one year, he should have a larger salary; that he should have an equal representation in the board of directors of the three companies, and should be made vice-president and general manager of them.

The contract contained a further provision that in case either party should desire to sell his holdings of stock in the three companies he should give the other party the first opportunity to purchase at not to exceed a price named.

Upon appeal from an interlocutory judgment sustaining a demurrer to the complaint,

*Held,* that the contract was an attempt to barter away the offices and management of the corporations, and was void as against public policy.

O'Brien, J., dissenting.

Appeal by the defendant, William F. Ross, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of May, 1895, upon the decision of the court rendered after a trial at the New York Special Term overruling the defendant's demurrer to the plaintiff's complaint.

*John A. Barhite,* for the appellant.

*Rignal D. Woodward,* for the respondent.

Van Brunt, P. J.:

The complaint in this action alleged that on the 12th of October, 1894, the plaintiff and defendant entered into an agreement, in

writing, a copy of which was annexed to the complaint, whereby the plaintiff agreed to deliver to the said defendant 899 shares of the par value of $100 each of the capital stock of the Greenbush Water Works Company of Greenbush, N. Y., and 865 shares of the par value of $50 each of the capital stock of the West Troy Water Works Company of West Troy, N. Y., and 287 shares of the par value of $100 each of the capital stock of the Green Island Water Company of Green Island, N. Y., on or before the 20th day of December, 1894, for and in consideration of the sum of $6,695, which the defendant agreed to pay.

The complaint further alleged that the defendant failed to fulfill his agreement and failed to pay said sum to the plaintiff although the plaintiff was able, willing and ready to deliver to said defendant the stock mentioned, and to carry out the provisions of said agreement by him to be performed, and that thereafter the plaintiff sold the stock at public auction for the account and at the risk of the defendant, after due notice to the defendant, for the sum of $2,025, after deducting expenses, and that by reason of the failure of the defendant to buy said stock at the time designated and to carry out said agreement, the plaintiff has been damaged in the sum of $4,670, which said defendant had failed to pay, and judgment was then demanded for that sum.

The defendant demurred to this complaint upon the ground that it did not state facts sufficient to constitute a cause of action. This demurrer being overruled, from the interlocutory judgment thereupon entered this appeal is taken.

Upon an inspection of the agreement annexed to the complaint it appears that, in addition to the delivery of the stock above mentioned, upon payment by the defendant of the sum stated, the plaintiff had further agreed that the defendant should have the management of the three companies in said agreement referred to, and should receive as compensation for such management for the period of one year, the sum of $1,500, payable monthly, and that the purpose and intent of this clause was that at the expiration of one year a new contract would be made at a greater sum than $1,500 a year, and that the defendant should have an equal representation in the board of directors of the three companies above referred to with the plaintiff, and should be made vice-president and general

manager of the three companies, and the defendant agreed to accept the said equal representation in the board of directors and the said offices of vice-president and general manager of the three companies, and to accept for the first year $1,500 per annum, payable monthly, as compensation for his services as such general manager. The agreement contained the further provision that, in case either party should desire to sell his holdings of stock in the three companies, he should give the first opportunity to purchase said holdings to the other party at a price not to exceed $10,000.

It is urged upon the part of the defendant that this agreement in respect to employment and to representation in the board of directors and officership in these corporations was against public policy, and, therefore, rendered the contract void. It is urged upon the part of the plaintiff, however, that the contract does not fall within the rule, but is sustained by the reasoning of the court in *Barnes* v. *Brown* (80 N. Y. 537). Upon an examination of this case, however, it seems to us that it fails to support the contention upon the part of the plaintiff. As a part and parcel of the bargain for the sale of the stock referred to in the complaint in this action, there was a bartering away of the offices and managment of the corporations and representation in their boards of directors. The case at bar differs radically from that of *Barnes* v. *Brown* (*supra*), in that in *Barnes* v. *Brown* the plaintiff sold his stock, and thereafter, ceasing to have any interest in the corporation, was naturally called upon to resign and to give the purchaser the representation to which his ownership of stock in the company entitled him. In the case at bar it nowhere appears what the interest of the plaintiff was, or whether he was enhancing his own private interests at the expense of the corporations or not. But it does appear that for a money consideration he was selling representation in the companies and positions in their management. We do not think that a contract of this description can be upheld.

It does not appear that the plaintiff in this action was the sole stockholder, or that he owned a majority of the stock. And even if this latter fact appeared, it might not be sufficient to justify a director or an officer of the corporation in selling its offices and management for money which he places in his own private pocket. As already stated, in the case at bar it does not appear but that the

plaintiff was sacrificing the interest of the other stockholders in these corporations for a money benefit to be derived by himself alone. It seems to us, therefore, that the attempted sale of stock connected with such conditions is necessarily against public policy and cannot be enforced.

Our attention has been called to no case where any such principle has been upheld. On the contrary, wherever there has been an attempt at bartering away the interests of the corporation by one of its stockholders or directors, contracts tending to that result have always been held to be against public policy. The case of *Barr* v. *N. Y., L. E. & W. R. R. Co.* (125 N. Y. 263) is no authority for the contrary proposition. Nor is the case of *Barnes* v. *Brown*, already cited. The courts have always held contracts, where directors and officers have been trading upon the interests of corporations for their own private advantage, to be void where they have been attempted to be enforced. In the case at bar, as already stated, the plaintiff was selling out representation in these companies and in their offices and management, for a consideration which he was placing in his own pocket.

The judgment should be reversed, with costs, and the demurrer sustained, with costs, and with leave to the plaintiff to amend upon the payment of costs in this court and in the court below.

Follett, J., concurred.

O'Brien, J. (dissenting):

The vice claimed to be inherent in the contract sued upon is the agreement by the plaintiff that the defendant should have the management of the three companies and receive compensation for such management and an equal representation in the boards of directors of the three companies, a portion of the stock in which the agreement provided should be sold to the defendant, this action being brought to recover damages for defendant's failure to pay the purchase price of such stock.

If it had been made to appear that this was an attempt to barter away the interests of the corporations by one of their stockholders or directors for a money benefit to be derived by the plaintiff, then undoubtedly it would be against public policy, and the contract could not be enforced. In this case, however, I fail to see how any

First Department, November Term, 1895.    [Vol. 90.

such inference can be drawn or presumption indulged in. It has always been held that a stockholder had the right to sell his stock, and if in the sale it was coupled with an agreement by which the person buying was to take an active interest in the affairs of the corporation, I do not see why, in the absence of anything to show that this was done in bad faith or contrary to the real interests of the corporation itself, it should not be upheld. The difference between my view and that presented in the prevailing opinion is in respect to the presumptions to be drawn from the contract, which is entirely silent upon the question as to whether the transaction would or would not inure to the benefit of the corporations. If, under such conditions, the presumption is to be indulged in, in the absence of any evidence to support it or facts appearing to warrant it, that such an arrangement is inimical to the interests of the corporations, then the conclusion reached would be right. But as a presumption should favor good faith and honesty rather than the reverse, I do not see why the contract is not susceptible of the view that it was made in good faith, without design to injure the companies, but, on the contrary, to bring in as a stockholder, and as an equal representative in the workings of the companies, a new man who was to take an active interest in their affairs, and who, for the work, was to receive a compensation agreed upon for the first year, and which was thereafter to be fixed.

Upon the ground, therefore, that there is nothing to show that in the contract made the plaintiff was trading upon the interests of the corporations for his own private advantage, and for the further reason that the presumption that he was so trading seems to me to be entirely gratuitous, I dissent from the conclusion reached, and think that the judgment should be affirmed.

Judgment reversed, with costs, and demurrer sustained, with costs, with leave to plaintiff to amend on payment of costs in this court and in court below.