SPRING and HISCOCK, JJ., concurred; WILLIAMS, J., concurred in result; McLENNAN, J., dissented.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars.

---

FRANK M. BONTA, Respondent, *v.* FRANCIS W. GRIDLEY, Impleaded with WILLIS T. GRIDLEY, Appellant.

*Contract between stockholders of a bank and a third person for the sale to the latter of stock in the bank and his election and continuance for five years as cashier — a complaint alleging a breach thereof is not demurrable, although the contract required the cashier to use his influence " towards retaining the services of the present board of directors."*

The complaint in an action brought by Frank M. Bonta against Francis W. Gridley and Willis T. Gridley alleged that the parties entered into the following agreement:

"This agreement made this 22nd day of November, 1897, by and between Francis W. Gridley and Willis T. Gridley, of Syracuse, N. Y., of the first part, and Frank M. Bonta, of the same place, of the second part, Witnesseth:

"WHEREAS, parties of the first part, being large holders of the capital stock of the Salt Springs National Bank of Syracuse, are desirous that said second

party should purchase stock thereof, and should remain with said bank and use his time and influence to promote its prosperity; now, in consideration of the covenants and agreements herein contained, to be performed by said second party, said parties of the first part jointly and severally covenant and agree to and with said party of the second part as follows:

" 1. The said party of the second part shall be elected (unless he, himself, uses his own influence to prevent his election) cashier of the Salt Springs National Bank at the annual meeting thereof, to be held in January, 1898, and shall continue to hold such office for the space of five (5) years, or until the annual meeting to be held in January, 1903, unless he sooner voluntarily resigns such position, as hereinafter provided.

" 2. He shall receive for his services as such cashier the annual salary of twenty-five hundred dollars ($2,500).

" 3. He shall have the power and authority and shall perform the duties usually performed by cashiers of National Banks in Syracuse, not inconsistent with law, subject to the by-laws of the bank and the resolutions of the discount committee and Board of Directors of said bank relative to loans.

" 4. Said first parties will purchase of said second party the fifty (50) shares of the capital stock of said bank purchased by him, as herein provided, at any time when he ceases to be cashier thereof, and pay him one hundred and thirty-five dollars ($135) per share therefor.

" In consideration of the premises said party of the second part covenants and agrees to and with said parties of the first part, that during the five years above described, or so long as he may remain cashier of said Salt Springs National Bank (he hereby expressly reserving the right to resign such position at any time), he will devote his whole time and attention to the promotion of the interests of the said Salt Springs National Bank, and will exercise such influence as he may possess in favor of said bank and toward retaining the services of the present board of directors. He further covenants and agrees to buy fifty shares of the capital stock of the Salt Springs National Bank at a price not to exceed one hundred and thirty-five dollars ($135) per share; "

That the plaintiff purchased fifty shares of the capital stock of the bank for $135 per share and entered upon the performance of his duties as cashier; that he faithfully performed all the conditions of the contract on his part until September 11, 1901, when he was discharged, without cause, from his position as cashier; that he then tendered the fifty shares of stock to the defendants and demanded the sum of $135 per share therefor; that, upon their failure to comply with such demand, he sold the stock at public auction and received therefor $100 per share.

The action was brought to recover damages for the breach of the contract. The plaintiff demanded judgment in the sum of $3,750, representing the loss of $35 per share on the fifty shares of stock and $2,000 as liquidated damages pursuant to a clause in the contract.

*Held,* that an interlocutory judgment overruling a demurrer to the complaint should be affirmed;

DAVY and WILLIAMS, JJ., dissented.

Per McLENNAN, J., that the contract set forth in the complaint was not void as against public policy;

Per McLENNAN and SPRING, JJ., that as the plaintiff had fully performed his part of the contract, and the defendants had had the benefit of such performance for a period of four years, the latter should not be permitted to urge its invalidity.

APPEAL by the defendant, Willis T. Gridley, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 5th day of March, 1902, upon the decision of the court, rendered after a trial at the Onondaga Special Term, overruling a demurrer to the complaint.

The defendants demurred to the plaintiff's complaint herein, upon the ground that it did not state facts sufficient to constitute a cause of action, and from the judgment overruling such demurrer this appeal is brought.

The complaint demands judgment for the sum of three thousand seven hundred and fifty dollars ($3,750) damages for the alleged wrongful breach of a written contract entered into between the parties hereto, of which the following is a copy:

" This agreement made this 22nd day of November, 1897, by and between Francis W. Gridley and Willis T. Gridley, of Syracuse, N. Y., of the first part, and Frank M. Bonta, of the same place, of the second part, Witnesseth:

" WHEREAS, parties of the first part, being large holders of the capital stock of the Salt Springs National Bank of Syracuse, are desirous that said second party should purchase stock thereof, and should remain with said bank and use his time and influence to promote its prosperity; now, in consideration of the covenants and agreements herein contained, to be performed by said second party, said parties of the first part jointly and severally covenant and agree to and with said party of the second part as follows:

" 1. The said party of the second part shall be elected (unless he, himself, uses his own influence to prevent his election) cashier of the Salt Springs National Bank at the annual meeting thereof, to be held in January, 1898, and shall continue to hold such office for the space of five (5) years, or until the annual meeting to be held in January, 1903, unless he sooner voluntarily resigns such position, as hereinafter provided.

FOURTH DEPARTMENT, NOVEMBER TERM, 1902.          [Vol. 77.

" 2. He shall receive for his services as such cashier the annual salary of twenty-five hundred dollars ($2,500).

" 3. He .shall have the power and authority and shall perform the duties usually performed by cashiers of National Banks in Syracuse, not inconsistent with law, subject to the by-laws of the bank and the resolutions of the discount committee and Board of Directors of said bank relative to loans.

" 4. Said first parties will purchase of said second party the fifty (50) shares of the capital stock of said bank purchased by him, as herein provided, at any time when he ceases to be cashier thereof, and pay him one hundred and thirty-five dollars ($135) per share therefor.

" In consideration of the premises said party of the second part covenants and agrees to and with said parties of the first part, that during the five years above described, or so long as he may remain cashier of said Salt Springs National Bank (he hereby expressly reserving the right to resign such position at any time), he will devote his whole time and attention to the promotion of the interests of the said Salt Springs National Bank, and will exercise such influence as he may possess in favor of said bank and toward retaining the services of the present board of directors. He further covenants and agrees to buy fifty shares of the capital stock of the Salt Springs National Bank at a price not to exceed one hundred and thirty-five dollars ($135) per share.

" The said parties hereto further jointly and severally covenant and agree to and with each other, that in case of the breach by any of the parties hereto of the covenants and agreements herein contained, or any of them, that the party guilty of such breach shall pay to the other, in case such breach occurs during the year 1898, five thousand dollars ($5,000); in case the breach occurs in the year 1899, four thousand dollars ($4,000); in case it occurs during 1900, three thousand dollars ($3,000); in case it occurs during the year 1901, two thousand dollars ($2,000); and in case it occurs during the year 1902, one thousand dollars ($1,000); the said sums herein provided for to be considered as liquidated damages for the breach of this contract or any part thereof, and in no respect as a penalty.

" In Witness Whereof, the parties have hereunto set their hands and seals of the day and year first above written.

"FRANCIS W. GRIDLEY.   [L. S.]

"WILLIS T. GRIDLEY.   [L. S.]

"F. M. BONTA.   [L. S.]"

It is alleged in the complaint that in or about December, 1897, the plaintiff, in pursuance of the covenant in said agreement upon his part, purchased fifty shares of the capital stock of said bank, and paid therefor $135 per share; that the plaintiff entered upon the performance of his duties as cashier of said bank and faithfully performed all the conditions upon his part until about the 11th day of September, 1901, when, without any fault on his part, he was discharged and removed as such cashier, and thereupon ceased to be cashier thereof; that thereafter, and on or about the eleventh and eighteenth days of September respectively, the plaintiff tendered to said Willis T. Gridley and Francis W. Gridley said fifty shares of stock, and demanded the sum of $135 per share, and requested them to purchase the same at said price, as in said agreement undertaken by them to do, which they and each of them refused to do; that thereafter, and on the 30th day of September, 1901, plaintiff caused said stock to be sold at public auction to the highest bidder, after due notice to said defendants and each of them, and after due public notice of said proposed sale, and upon such sale received for such stock only $100 per share. The loss of $35 per share, amounting in the aggregate to the sum of $1,750, added to the amount of the liquidated damages which each of the parties of the first part, the defendants, agreed to pay in case a breach of said agreement occurred during the year 1901, to wit, $2,000, constitutes the damages which the plaintiff seeks to recover.

*B. A. Benedict,* for the appellant.

*Charles P. Ryan,* for the respondent.

McLENNAN, J. :

For the purposes of this review we must regard as established all the allegations of fact contained in the complaint. The principal reason urged by appellant for the reversal of the interlocutory judgment overruling the demurrer is that the contract is void, as being against public policy.

We think the contract set forth in the complaint is valid. Neither party to the contract was an officer or director of the bank. The defendants were stockholders only, presumably were interested in the welfare and success of the bank, and, so far as appears, in good faith desired to promote the best interests of the corporation in which they were thus interested, and to that end they wished to procure the services of the plaintiff, a man of large experience, as cashier, for the period of five years, and by the contract in question, not as directors or officers of the bank, but as individuals, undertook to secure such services.

To the end, as we must assume, that the plaintiff should also have a pecuniary interest in the success and welfare of the bank, the defendants required him, as a condition of his employment, to become a stockholder and to purchase fifty shares of the capital stock, they agreeing that at any time the plaintiff should cease to be cashier they, the defendants, would purchase from him such stock, at his option, and pay at least $135 per share therefor. The plaintiff agreed that while he remained cashier he would use his influence to promote the best interests of the bank and to retain in office its then existing board of directors, which, for aught that appears, was for the best interests of the bank. He did not agree to assist in electing the defendants directors, or help to secure to them any other office, nor did he agree to vote his fifty shares of stock in any particular manner or for any particular purpose.

This state of facts clearly distinguishes the case at bar from the class of cases relied upon by defendants' counsel. In the case of *Fennessy* v. *Ross* (90 Hun, 298; 5 App. Div. 342) the plaintiff, who was a stockholder in three corporations, entered into a contract by which the defendant agreed to purchase stock of the plaintiff, and the plaintiff agreed that the defendant should have the management of the three corporations and equal representation with the plaintiff in the board of directors, and an annual salary fixed by the contract. In that case, also, the contract was entirely executory. It was held that such a contract was not enforcible.

The same distinction exists between the case at bar and the case of *Guernsey* v. *Cook* (120 Mass. 501).

So far as we have been able to discover, it has not yet been held by any court that two stockholders of a corporation may not legiti-

mately agree between themselves to use their influence jointly to secure the election of a certain board of directors of such corporation, even if one of such stockholders happens to be its cashier, provided only that the proposed agreement is entered into in good faith and for the purpose of promoting the best interests of the corporation, and in fact does promote its best interests. (*Barnes* v. *Brown,* 80 N. Y. 527.) But, in addition to the contract having been fully performed by the plaintiff, and the defendants having had the benefit of such performance for a period of four years, they ought not now to be allowed to urge its invalidity.

In the case of *National Wall Paper Co.* v. *Hobbs* (90 Hun, 288) the court said : "It is urged, however, upon the part of the defendant, that the contract which was entered into by his firm and himself with the plaintiff was void because it was part of a corrupt and wicked conspiracy against the law and public policy of this State in that it was a combination of manufacturers for the purpose of putting up the price of goods and down the price of wages. In view of the fact that the defendant retained the price which was paid for his corrupt and wicked agreement, it is difficult to see how he can claim that he should be absolved from its obligations or how he can claim, being a party to the instrument and having received that which he considered an adequate consideration for the restraint which was put upon his volition, that such restraint should be removed and he be permitted to enjoy the fruits of what he claims to be his unlawful agreement. We do not think that the defendant is in a position to attack this contract, certainly not with its fruits in his pocket."

One who accepts and retains the benefits of a contract cannot allege, as a defense to an action upon it, that it is void as against public policy. (*Noble* v. *McGurk,* 16 Misc. Rep. 461; *Newman* v. *Nellis,* 97 N. Y. 285 ; *Ryan* v. *Dox,* 34 id. 307.)

The conclusion is reached that the interlocutory judgment overruling the demurrer should be affirmed, with costs, with leave to the defendants to answer within twenty days after entry and service of a copy of this order.

SPRING, J., concurred in second ground stated in opinion ; HISCOCK, J., concurred in result ; DAVY, J., dissented in an opinion in which WILLIAMS, J., concurred.

DAVY, J. (dissenting):

The principal question in this case is whether the contract, which is made a part of the complaint, is void as against public policy.

The effect of the contract was to control the plaintiff as a stockholder and an officer of the bank in retaining the old board of directors in office during the period of five years.

The plaintiff occupied a position of trust and confidence which required him to look only to the best interests of the corporation, but this contract placed him under obligation to vote to retain the old board of directors in office, even though it was for the best interest of the corporation to elect new directors. The defendants, in consideration of the plaintiff purchasing the fifty shares of stock and using his influence to keep the old board of directors in office, agreed to elect him cashier of said bank for five years.

A stockholder who acts with others in a matter of common interest to all has no right to secure to himself any particular profit or advantage over his associates by any secret or undisclosed agreement. (*Adams* v. *Outhouse,* 45 N. Y. 322, 323; *Bliss* v. *Matteson,* Id. 22.) It would be a fraud upon the other stockholders of the corporation.

The defendants had no power to control the business of the corporation, or to enter into a contract binding the plaintiff to exercise his influence to retain the services of the old board of directors. It appears upon the face of this agreement that it must have been made for the private advantage and benefit of the parties thereto. The defendants were evidently attempting to get control of the corporation to shape its policy and control its business. The facts are similar in many respects to the case of *Guernsey* v. *Cook* (120 Mass. 501.) It was there held that a contract by which a stockholder in a corporation, in consideration of the purchase of a part of his stock at a price named, agreed to secure to the purchaser the office of treasurer of the corporation with a fixed salary, and in case of his removal to repurchase the stock, was void as against public policy and was a fraud on the other members of the corporation, in the absence of evidence that the transaction was not for a private benefit of the shareholder, or that it was consented to by the other members of the corporation.

It was plainly the intent of the parties to this contract to place it

beyond the power of the corporation for five years to change its directors, and to take from the directors the power to appoint or elect any other cashier than the plaintiff, even though he should prove unfaithful to his trust. The power to appoint and remove officers of the corporation rests with the directors and this power cannot be taken away by a contract made by any of the stockholders.

The stockholders have but few functions. All contracts of a corporation are usually made by or under the direction of the board of directors. They have the exclusive power to make corporate contracts. They appoint or elect the officers of the bank, and they can act only as a board duly notified and assembled. The members of the board cannot individually outside of the meeting make any contract that will bind the corporation, unless the contract is subsequently ratified by the board of directors. Courts do not permit stockholders or directors to trade or barter away the offices of a corporation for their own private advantage, and when such contracts are attempted to be enforced, courts have uniformly held that they were void as against public policy. (*Fennessy* v. *Ross*, 90 Hun, 298; 5 App. Div. 342; *Barnes* v. *Brown*, 80 N. Y. 527; *Bliss* v. *Matteson*, 45 id. 22; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 id. 274.)

The rule laid down in *Fennessy* v. *Ross* (90 Hun, 298) is applicable to this case. The court held that contracts entered into by directors and officers of a corporation for the purpose of trading upon, or attempting to barter away, the interests of a corporation for their private advantage are void as against public policy.

The same case came before the Appellate Division (5 App. Div. 344) upon an appeal from an interlocutory judgment sustaining a demurrer to and dismissing the amended complaint. The court said : "We are unable to see that there is any real difference between the case as it stood upon the original complaint and as it now stands upon this amended complaint. It still remains that the plaintiff was bartering away the offices of the companies and a representation in their boards of directors. It was not only a contract by which the plaintiff, as part of the consideration for the money he was to receive for his shares, agreed to make the purchaser a general manager and the vice-president of the corporation, but he also agreed to keep him there at a compensation of $1,500 for the first year and at

a larger compensation afterwards." The court held that this contract was void as against public policy, and was a fraud on the other members of the corporation.

If stockholders are dissatisfied with any of the officers of the bank their remedy is to induce the directors to elect other officers in the manner and at the time provided by the charter. No stockholder has a right to employ officers or interfere with the management of a banking corporation, nor can the board of directors be controlled by any stockholder in the exercise of discretionary powers conferred upon them by the charter.

The affairs of a bank must necessarily be under the exclusive control of its directors, and they are required to perform the duties thereof in such a way as to promote the best interests of the stockholders. (*Cassidy* v. *Uhlmann*, 170 N. Y. 516.)

In *Smith* v. *Hurd* (12 Metc. 371, 385) the relations of stockholders to a banking corporation are stated by Chief Justice SHAW with his usual clearness and precision. He said: "Individual members of the corporation, whether they should all join, or each act severally, have no right or power to intermeddle with the property or concerns of the bank, or call any officer, agent or servant to account, or discharge them from any liability."

The power to employ the cashier and the other officers of the bank rested solely with the board of directors. The agreement, therefore, was unauthorized by the bank, and was invalid as contrary to public policy.

While it is true that the objection raised by the defendant that the contract is illegal comes with no good grace from him, it is not allowed to prevail against him on the ground that he is in the right, but for the public good, and also for the reason that the court will not lend its aid to either party to enforce a contract that is void as against public policy.

The demurrer to the complaint should be sustained, with costs.

WILLIAMS, J., concurred.

Interlocutory judgment affirmed, with costs, with leave to defendants to withdraw their demurrer and answer within twenty days after entry and service of this order, upon payment of the costs of the demurrer and of this apppeal.