SAN REMO COPPER MINING CO. v. MONEUSE.

(Supreme Court, Appellate Division, First Department. February 2, 1912.)

1. CORPORATIONS (§ 638*)—FOREIGN CORPORATIONS—WHAT LAW GOVERNS.

> A stock corporation organized under the laws of West Virginia is controlled in its internal management by the statutes of that state.
>
> [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2529; Dec. Dig. § 638.*]

2. CONTRACTS (§ 121*)—VALIDITY—CONTROL OF CORPORATIONS.

> A contract between a stock corporation organized under the laws of West Virginia and defendant, which stipulates that defendant will furnish money to redeem the property of the corporation from a foreclosure sale and to develop the property, and that the corporation will deliver to him unissued stock sufficient to give him absolute control of the corporation, with power to elect officers, is not invalidated by stipulations that the defendant shall be invested with control at once on acquiring the stock, instead of waiting for the next annual meeting, notwithstand-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing Stock Corporation Law (Consol. Laws 1909, c. 59) § 30, providing that the directors shall appoint the officers of the corporation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 504; Dec. Dig. § 121.*]

3. CONTRACTS (§ 9*)—VALIDITY—DEFINITENESS.

A contract binding an individual to furnish to a mining stock corporation sufficient money to redeem the property of the corporation from a foreclosure sale and to furnish sufficient money to develop the property until the mines shall yield sufficient returns to pay for working the same is not so indefinite as to render it unenforceable.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 10–20; Dec. Dig. § 9.*]

Appeal from Special Term, New York County.

Action by the San Remo Copper Mining Company against Elie J. Moneuse. From an order of the Special Term (132 N. Y. Supp. 570), denying a motion for an order overruling a demurrer to the amended complaint, and granting defendant's motion for judgment on the pleadings, plaintiff appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and SCOTT, JJ.

James F. Mack, for appellant.
Barnett L. Hollander, for respondent.

SCOTT, J. Plaintiff appeals from an order denying its motion to overrule a demurrer to the complaint and granting defendant's motion for judgment upon the pleadings. The action is for damages for defendant's failure to comply with a written contract, which is annexed to the complaint. The demurrer is for general insufficiency.

The complaint shows that plaintiff is organized with a capital stock divided into 500,000 shares, of which it had issued, when the contract was executed, 79,935 shares, and had on hand 420,065 shares. It owned certain mining claims in the town of Gleason, Ariz., and owned certain other claims and a mill. These latter claims and the mill had been sold under foreclosure for $30,050, but could be redeemed at any time prior to July 27, 1905. Under these circumstances plaintiff and defendant on April 28, 1905, entered into a contract reciting the foregoing facts. Defendant agreed to furnish sufficient money to cause the mining claims, mill sites, and mill to be redeemed in the name of plaintiff from said foreclosure sale, and further agreed "to furnish sufficient money as required from time to time to operate the said mines and mining claims until said mines and mining claims shall yield sufficient returns to pay for working and operating the same."

In return for the money thus to be furnished, and in consideration of defendant's agreement so to furnish it, plaintiff agreed to deliver to defendant the 420,065 shares of its capital stock still unissued as his absolute property. This stock was to be so delivered to him when he should have redeemed the property from the foreclosure sale, and it was agreed that then the present secretary and treasurer of plaintiff would resign, and the board of directors would appoint any per-

son or persons to said offices that defendant should nominate, and that a stockholders' meeting would then be called, and a new board of directors elected. The defendant did not furnish the money to redeem the foreclosed mining claims and mill, and they were consequently lost to plaintiff. Naturally the agreement then fell through. The Special Term was of opinion that the whole agreement was invalid and unenforceable, because of the agreement that, when defendant had acquired a vast majority of the stock of the company, the then secretary and treasurer would resign and the board of directors would appoint defendant's nominees to such positions. This was deemed to be contrary to the public policy of this state as expressed in section 30 of the stock corporation law, which provides that the board of directors shall appoint the officers of a corporation; the argument being that it was contrary to the statute and to the public policy of the state for a corporation to agree that its board of managers could surrender their discretion in the matter of appointing officers or employés.

[1, 2] It is perhaps a sufficient answer to this suggestion to note that plaintiff is a West Virginia corporation, and controlled, so far as its internal management is concerned, by the statutes of that state. What these statutes provide as to the appointment of officers does not appear. But, apart from this, the provision to which exception was taken at Special Term is not a vital part of the contract, but merely an incidental provision, inserted for defendant's benefit, and of which he need not have availed himself, if he had not desired to do so. He was about to become, if he carried out his agreement, the owner of an overwhelming proportion of the capital stock, which would give him, without any special agreement, the absolute control of the corporation, with power to elect a board of directors, and in effect to dictate who should be its officers and employés. It certainly did not destroy the validity of the contract that by one of its terms defendant was to be invested with this power of control at once, upon acquiring the stock, instead of waiting for the next annual meeting.

[3] It is further objected that the contract is too indefinite as to the obligations assumed by defendant to render it enforceable. There was nothing indefinite about the promise to furnish sufficient money to redeem the property from the foreclosure sale. The amount required for that purpose was definitely fixed. Of course, the amount which it would be necessary to expend in developing the property was necessarily left indefinite; but the test of the amount to be furnished or advanced is perfectly definite. So much was to be furnished as would put the mines and mining claims in a condition "to pay for working and operating the same." In our opinion, the complaint stated a sufficient cause of action.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the defendant's motion for judgment on the pleadings denied, with $10 costs. Plaintiff's motion that the demurrer to the complaint be overruled is granted, with $10 costs, with leave to defendant to withdraw his demurrer and answer within 20 days, upon payment of the foregoing costs. All concur.