In the Matter of HYMAN CAPLAN, Respondent-Appellant, *v.* LIONEL CORPORATION, Appellant-Respondent. ROBERT A. WOLFE et al., Intervenors-Appellants.

First Department, February 24, 1964.

302

*Raymond S. Harris* of counsel (*Martin A. Coleman* and *Stephen E. Fischer* with him on the brief; *Wachtel & Michaelson*, attorneys), for respondent-appellant.

*Morris B. Abram* of counsel (*Gerald D. Stern* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison*, attorneys), for appellant-respondent.

*Milton S. Gould* of counsel (*Martin I. Shelton* with him on the brief; *Gallop, Climenko & Gould*, attorneys), for intervenors-appellants.

STEUER, J. On March 8, 1963, Defiance Industries, Inc., entered into a transaction with Roy Cohn which, though unusual in form, amounted to a deferred sale of 55,000 shares of Lionel Corporation then owned by Cohn. Half of the stock was to be delivered one year from date, the balance two years from date. Payment was made at the rate of $5⅛ per share, but Cohn gave two promissory notes each for half of the purchase price he had received, the due dates of the notes corresponding with the delivery dates of the stock. In the event the stock was selling at the purchase price or less, the notes were to be cancelled on delivery. If it was selling for more, the difference was to be paid in addition to cancellation. In the event Cohn was unable to deliver the stock, the notes were to be paid. The voting rights of the stock were transferred immediately to Defiance. The 55,000 shares constituted 3% of the outstanding stock of Lionel Corporation.

The board of directors of Lionel consisted of 10 directors, of whom Cohn was one. Six of the other directors were his nominees. Just how his holdings, amounting to 3%, enabled him to have this representation does not appear. Immediately after making the contract, these six directors resigned and their places were filled by nominees of Defiance.

On October 9, 1963, Defiance sold its interest in the above-described contract to A. M. Sonnabend, the transaction to close October 23, 1963. It was a condition of that agreement that prior to closing, the six Defiance directors should be replaced by nominees of Sonnabend. On October 16 this was done. On November 14, 1963, Cohn resigned as a director and was replaced

by a Sonnabend nominee. All of these changes in the board were effected by the directors filling the vacancy as each was created by resignation.

This proceeding is brought by a stockholder of Lionel to set aside and vacate the elections of the seven directors so elected. Special Term found the elections to be illegal and vacated them. With this finding and disposition we are in accord. The underlying principle is that the management of a corporation is not the subject of trade and cannot be bought apart from actual stock control (*McClure* v. *Law,* 161 N. Y. 78). Where there has been a transfer of the majority of the stock, or even such a percentage as gives working control, a change of directors by resignation and filling of vacancies is proper (*Barnes* v. *Brown,* 80 N. Y. 527; *Farmers' Loan & Trust Co.* v. *New York & Northern Ry. Co.,* 150 N. Y. 410; *San Remo Copper Min. Co.* v. *Moneuse,* 149 App. Div. 26). Here no claim was made that the stock interest which changed hands even approximated the percentage necessary to validate the substitution.

Opposition is confined to the claims that the petitioner cannot be heard to complain and that the vacatur was of no practical consequence. As to the first, it is rightfully claimed that a proceeding pursuant to section 619 of the Business Corporation Law may only be brought to contest an election by a stockholder " aggrieved " by the election. It is then postulated that a stockholder who had no right to vote at the election complained of is not a person aggrieved. Several cases, in our opinion validly decided, are cited to support this contention. But none of these cases is apposite. One cannot complain of irregularities in an election where one has no right to vote. It is otherwise where there has been no right to have an election at all, or where the purported exclusion is the denial of a franchise.

The second objection, which is in the nature of a pragmatic argument, is that the power to elect directors in place of those removed by the court rested with the three remaining directors and, as those would elect the individuals whom the court had removed, their removal was futile. Discussion of the premise would bring us to the next ordering provision of Special Term's order, and attention will be given to it below. Assuming its validity, the court would be well justified in vacating the elections and leaving to the remaining directors to do what their judgment and duty to the stockholders and the corporation prompted them to, rather than accepting theirs, or anyone else's prediction as to what their action would be before they were actually faced with the step to be taken.

Having vacated the election of these directors, the court nevertheless allowed them to remain in office until their successors were elected by the stockholders, restraining them in the meantime from using their offices as directors to further the election of any candidates for the directorships to be voted on and further enjoining them from any transactions with Premier Corporation. The latter is a corporation controlled by Sonnabend and through whom it was contemplated that certain mergers of Lionel with other corporations would be effected. A Referee was appointed to supervise the election. No date for the election was fixed in the order, it being contemplated that it would take place at the regular annual meeting of stockholders in April, 1964. A subsequent order provided for a special meeting for this purpose to be held March 12, 1964.

We believe these provisions to be without legal sanction. After having rightfully voided the election of the seven substituted directors, the next question presented is where the right lies to fill the vacancies thus created. By statute (Business Corporation Law, § 705, subd. [a]), it is provided that vacancies in the board of directors may be filled by vote of a majority of the directors remaining in office, even though less than a quorum remains, unless the by-laws of the corporation provide that the vacancies shall be filled by the stockholders. Special Term decided that the by-laws so provide. We do not agree. Admittedly, there is no specific by-law on the subject. The by-laws do provide that six directors shall constitute a quorum and, by definition, a quorum is necessary to do any business. However, the statute provides that for this purpose a quorum is not necessary. The by-laws referred to do not negative this proposition, nor do they provide that vacancies shall be filled by the election of the stockholders. It follows that the method provided by law for the filling of the vacancies would be by election by the remaining directors.

As a consequence, the remaining provisions for an election, for continuing the removed directors, and for the Referee, are unwarranted and should be vacated. The subsequent order dealing with the details of the proposed election become ineffectual, the arguments in regard to it are rendered academic, and the so-called cross appeal should be dismissed.

The order should be modified, on the law and the facts, by striking therefrom all ordering provisions subsequent to the first and by striking the supplemental order of February 10, 1964, and, as so modified, affirmed, without costs. Cross appeal from the supplemental order should be dismissed, without costs.

Botein, P. J., Valente and Eager, JJ., concur.

Order, entered on February 5, 1964, unanimously modified, on the law and on the facts, by striking therefrom all ordering provisions subsequent to the first and, as so modified, affirmed, without costs. The appeal from the order entered on February 10, 1964 is dismissed, as academic, without costs.