OPINION OF THE COURT
Carolyn E. Demarest, J.
In this proceeding for dissolution of a residential cooperative corporation pursuant to Business Corporation Law § 1104-a, by motion noticed for June 25, 2008, petitioner moved for an order (1) granting her statutory interest from the date preceding the filing of her petition; (2) directing respondents to post a bond as security for their election pursuant to Business Corporation *786 Law § 1118 to buy petitioner’s interest in the cooperative; and (3) declaring that the valuation of petitioner’s interest would be based on 25% of the fair value of the entire building rather than 20% of the whole or limited to the fair value of her unit within the building. Respondents cross-moved for an order directing petitioner to place her apartment (in which she no longer resides) on the market for immediate sale at the highest price reasonably attainable so as to mitigate the costs to respondents.
On September 3, 2008, the court issued an order denying petitioner’s request to order the posting of a bond, finding that the value of the real property as a whole was sufficient to secure petitioner’s interest, and denying petitioner’s motion for a determination as to a discretionary award of interest pending a full hearing on the issues relating to valuation, and further denying respondents’ cross motion to order the immediate marketing for sale of petitioner’s apartment as there is no authority for such an order at this point in the litigation. The determination of petitioner’s proportional interest was reserved and the parties were referred to mediation. As mediation has not been successful in resolving this case, and trial is scheduled for February 23, 2009, the court will address the only remaining legal issue determinable at this time: the petitioner’s proportionate interest in the assets of the corporation.[1]
Facts[2]
The respondent cooperative corporation was formed in 1975 for the purpose of purchasing 162 Columbia Heights, a land-marked brownstone structure in Brooklyn, New York, and to operate the building as cooperative residential units. There are five units in the building occupied by petitioner and respondents DeLille, McGrath also known as Viveros,[3] Riccio and Esposito, each of whom owns 400 shares of the corporation and occupies a unit pursuant to a proprietary lease appurtenant to those *787 shares. Although petitioner disputes the legality of the transfer of shares and the lease for the garden unit to respondent Esposito, she has pleaded his status as a shareholder and lessee.
Related to this dissolution proceeding, which was commenced on May 25, 2007, is an action (index No. 27566/05) brought by petitioner herein against the corporation and shareholders DeLille and McGrath, for $221,000 in legal fees allegedly advanced by petitioner on behalf of the corporation in the defense of a lawsuit brought by a former shareholder/tenant (Gudas action) and for $550,000 advanced by petitioner as settlement funds in that case, which is not disputed. Defendants in the related action dispute their liability for the legal fees.
During the pendency of the Gudas litigation, petitioner served the corporation as its president or vice-president and treasurer and as a board member and was responsible for managing the litigation. However, following settlement of that action on May 10, 2004, a dispute arose among the shareholders regarding the disposition of the garden apartment and the 400 shares appurtenant thereto which the majority believed were owned by the corporation and petitioner contended belonged to her. As a result of such disagreement, at a shareholders meeting held June 14, 2005, petitioner resigned her position as president and as a member of the board of directors. It is petitioner’s position that thereafter no validly elected board existed to perform the business of the corporation because the subsequent meetings, at which an additional director was elected, were not properly noticed. Therefore, petitioner argues, the transfer of the 400 shares appurtenant to the garden apartment and the issuance of the proprietary lease for that apartment, which occurred on May 25, 2006, was void and she should be credited as having a 25% interest, as opposed to a 20% interest, in the fair value of the corporation for purposes of valuation pursuant to the corporation’s election, under Business Corporation Law § 1118, to purchase her interest.
Discussion
It appears to be undisputed that the original bylaw providing for “at least three and not more than seven” directors (article III, § 1) has been superceded by amendment to provide for only *788 two directors.[4] It is further not disputed that petitioner resigned as a director in June 2005. Section 4 of article III of the bylaws supplied to the court provides that “a majority” of the remaining directors may fill a vacancy created by resignation without notice to shareholders and without regard to the presence of a quorum until the next annual or special meeting of shareholders. Similar language appears in Business Corporation Law § 705 (a):
“Newly created directorships resulting from an increase in the number of directors and vacancies occurring in the board for any reason except the removal of directors without cause may be filled by vote of the board. If the number of the directors then in office is less than a quorum, such newly created directorships and vacancies may be filled by vote of a majority of the directors then in office.” (Emphasis added.)
This statutory provision, reflected in the bylaws of the corporation, has been uniformly interpreted to permit a vacancy created by resignation to be filled by “a majority” of the remaining board members. (Matter of Jacobson v Moskowitz, 27 NY2d 67 [1970]; Matter of Coplan v Lionel Corp., 20 AD2d 301, 304 [1st Dept 1964], affd 14 NY2d 679 [1964]; Avien, Inc. v Weiss, 50 Misc 2d 127, 132-133 [Sup Ct, Queens County 1966]; see also Matter of Gearing v Kelly, 15 AD2d 219 [1st Dept 1961], affd 11 NY2d 201 [1962].) The compelling reason for the statutory rule, incorporated into the bylaws here, is that the corporation would be paralyzed from acting in a situation in which emergency action regarding a substantive matter might be necessary were a quorum of the full authorized board necessary to fill vacancies. By permitting a majority of the remaining directors to fill the vacancy, the quorum needed to act upon other matters can be achieved. (See Matter of Jacobson, 27 NY2d at 71-72; Avien, Inc., 50 Misc 2d at 133.)
Because, in this case, only two directors constitute the entire board, the remaining board member following petitioner’s resignation, Keiko DeLille, would have been authorized to appoint a second director to fill the vacancy as she was the only director then in office. Although petitioner argues to the contrary on the theory that DeLille could not alone constitute a “majority,” such analysis is not only illogical, since any decision *789 taken by the only authorized director would necessarily be unanimous and thus exceed the required “majority,” but would contradict the clear intent of both the statute and the corporation’s bylaws to provide a mechanism to overcome the paralysis arising from the lack of sufficient directors to act on behalf of the corporation. It is noted that petitioner deliberately resigned knowing that her absence would impede the functioning of the board. (See Gearing, 15 AD2d at 221-222.)
In any case, respondents contend that a shareholders meeting was convened on September 8, 2005, for the purpose of electing a new board of directors and that all shareholders were present, including petitioner, as represented by her attorney Joseph French who held her proxy. A vote was taken to place the garden apartment on the market for sale, to which all parties, except petitioner through Mr. French, agreed. The meeting was interrupted when a process server appeared and served petitioner’s complaint in the 2005 action. The meeting was then adjourned to October 13, 2005.
On October 13, 2005, despite actual knowledge of the adjourned date by virtue of Mr. French’s presence at the earlier meeting, petitioner did not appear. Present were respondents Keiko DeLille, Erika McGrath also known as Viveros, and Anthony Riccio, by proxy to DeLille. Viveros and DeLille were unanimously elected directors. Thereafter, several board meetings were held, at which both directors were present. At a board meeting on December 7, 2005, which both directors attended, an offer from Mr. Esposito for purchase of the garden apartment at the asking price of $850,000 was accepted. The transaction closed on May 25, 2006. The instant petition was filed May 25, 2007. Thus, the valuation date for the purpose of determining the fair value of petitioner’s shares is May 24, 2007. (See Business Corporation Law § 1118 [b].) As the Esposito closing had taken place a full year before, unless the transfer of 400 shares from the corporation to Esposito is voided, petitioner’s interest is 20% of the fair value of the corporation on May 24, 2007.
Petitioner relies upon Business Corporation Law § 605 and article II of the bylaws to void all actions taken by the corporation subsequent to her resignation on June 14, 2005, contending that the failure to give written notice of the shareholders meetings at which respondent McGrath, also known as Viveros, was elected a director rendered all subsequent actions of the board ultra vires. As previously noted, the *790 complete current bylaws have not been provided; however, Business Corporation Law § 605 (b) provides that when a duly-noticed shareholders meeting is adjourned and the time and place of such adjournment is “announced at the meeting at which the adjournment is taken,” further notice of the adjourned meeting is not required in order to transact any business that might have been transacted at the original meeting. Further, article II, § 4 of the bylaws submitted in petitioner’s moving papers and upon which respondent DeLille relies in her affidavit in support of cross motion sworn September 2, similarly provides that “[n]o notice of the time and place of the adjourned meeting need be given other than by announcement at the meeting.” Thus, since notice of the October 13, 2005 meeting, at which director McGrath, also known as Viveros, was elected, was given at the September 8, 2005 meeting, attended by attorney French on behalf of petitioner, it is only the notice of the September 8 meeting that is at issue. However, petitioner did receive notice of the September meeting as evidenced by the presence of her agent; she therefore clearly waived any defect in notice. (See Tatko v Sheldon Slate Prods. Co., 2 AD3d 1030, 1032 [3d Dept 2003]; cf. Matter of Flushing Hosp. & Dispensary, 288 NY 125 [1942].)
Petitioner herself cites Business Corporation Law § 606 which states: “The attendance of any shareholder at a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting, shall constitute a waiver of notice by such shareholder.” There is no indication that Mr. French interposed any objection regarding the lack of notice at the meeting of September 8, 2005. Section 3 of article II of the bylaws states: “The notice [of shareholders meetings] provided for in the two foregoing sections is not indispensable but any shareholders’ meeting whatever shall he valid for all purposes if all the outstanding shares of the Corporation are represented thereat in person or by proxy” (emphasis added). Moreover, annexed to the DeLille affidavit of September 2 is a copy of a “Notice of Shareholders Meeting” dated August 24, 2005 and signed by Keiko DeLille as president. On the agenda is the “Election of Directors.”
There is simply no merit to petitioner’s suggestion that action was taken in the absence of a quorum in light of the evidence that all of the shareholders, including petitioner herself, were either actually present or present by proxy at the September 8 meeting. Similarly, with the exception of petitioner, all shares *791 were represented, at the meeting on October 13, 2005. Although, in her statement of undisputed facts (1Í 38), petitioner asserts that “the execution of a contract of sale, the closing of a transaction . . . and the handling of the proceeds of the sale of the Garden Unit” required a board of directors “and/or” a shareholders meeting, no authority is cited for the alleged requirement of a shareholders meeting. Generally, the board of directors has the authority to make corporate business decisions. A perusal of the bylaws for the corporation indicates that such authority is vested in the corporation’s board of directors. The board minutes of December 7, 2005 evidence unanimous approval of the sale of the garden unit to Esposito. The minutes of the shareholders meeting of September 8, 2005, at which all shareholders were represented, indicate a vote of at least 60% (Riccio, Viveros and DeLille) in favor of selling the garden unit. Thus, at least a majority of the shareholders had voted in favor of a sale. Although petitioner was apparently not given proper notice of shareholders meetings held subsequent to the closing on the garden unit, there is no basis upon which to void the action of the board in closing that sale and transferring the 400 shares held by the corporation to Esposito, which occurred a year before this petition was filed.
Petitioner cites Business Corporation Law §§ 515 and 612 (b) in support of her claim to be entitled to a 25% interest, as opposed to only a 20% interest, in the corporation, insisting that the 400 shares allocated to the garden unit were “can-celled” upon reacquisition by the corporation at the time of the Gudas settlement in 2004. There is no indication that the shares were required to be cancelled upon reacquisition (see Business Corporation Law § 515 [a]) and their subsequent sale, upon authorization by the board, would contraindicate such cancellation. Therefore, the applicable provision is Business Corporation Law § 515 (b) which states: “Any shares reacquired by the corporation and not required to be cancelled may be either retained as treasury shares or cancelled by the board at the time of reacquisition or at any time thereafter.” The evidence supports the respondents’ contention that the shares were retained as treasury shares and were subsequently disposed to Esposito for fair consideration. Business Corporation Law § 515 (c) provides that where treasury shares are sold by the corporation, “the surplus shall be increased by the full amount of the consideration received” without effect upon capitalization. Thus, the funds paid by Esposito for his shares should be *792 reflected in the assets of the corporation. In fact, it is undisputed that $650,000 of those funds are being held in escrow by-petitioner’s attorney against the debts incurred by the corporation upon petitioner’s advances to fund the Gudas settlement. Petitioner’s argument in reliance on Business Corporation Law §§ 515 and 612 (b) is ineffective to overcome the legitimate acts of the board in transferring the shares to Esposito.
Upon the undisputed facts submitted to this court, petitioner’s interest in the corporation on May 24, 2007, based upon her ownership of 400 out of 2,000 outstanding shares on that date, is determined to be 20% of the fair value of the assets of the corporation, including the market value of the building at 162 Columbia Heights and any other corporate assets, less the corporation’s liabilities. (See Matter of Blake v Blake Agency, 107 AD2d 139, 146 [2d Dept 1985] [“Net asset value is generally the standard applicable in evaluating . . . real estate and investment holding companies”].)[5]

. Respondents, in their submissions in opposition to petitioner’s motion, have resisted petitioner’s “application to have this Court issue advisory opinions regarding the value of petitioner’s shares in the Co-op.” However, counsel have been advised that this court would treat the motion as one for summary judgment on the limited issue of petitioner’s proportional share strictly as a matter of law, leaving to trial the determination of actual valuation. Both sides have briefed the issues and counsel have appeared to agree that such a determination will expedite the trial.

. Both sides have submitted statements of undisputed facts from which, to the extent there is no conflict, the relevant facts have been determined.

. The minutes provided as exhibits to the pending motions list a shareholder named “Erika Viveros” as a director and officer. Given the *787 uniqueness of the first name, and from the arguments, the court infers that respondent McGrath is also Erika Viveros.

. No copy of these amended bylaws has been supplied to the court, but neither side in the litigation has disputed the applicability of the bylaws that have been submitted.

. The applicable standard in determining “fair value” for purposes of an election pursuant to Business Corporation Law § 1118 is “ ‘what a willing purchaser in an arm’s length transaction would offer for petitioners’ interest in the company as an operating business’ ” (Matter of Penepent Corp., 96 NY2d 186, 193 [2001], quoting Matter of Seagroatt Floral Co. [Riccardi], 78 NY2d 439, 445 [1991]). However, the elements applicable in determining the fair value of a petitioner’s share vary according to the nature of the enterprise. (See Matter of Friedman v Beway Realty Corp., 87 NY2d 161, 167 [1995].) The business of the corporation here is limited to providing housing to the occupant shareholders. There is no “profit” to the shareholders or the corporation other than the increase in the value of the building resulting from improvements thereto and/or general market conditions. Thus, the fair value of petitioner’s interest will largely depend on the appraisal value of the building at the valuation date, but will also include any other assets, such as bank accounts, less any liabilities, such as debts of the corporation.